# NATHAN J. STRASBURGER ET AL., APPELLANTS, *v.* SAMUEL A. BEECHER, RESPONDENT.

[Submitted May 27, 1897. Decided July 26, 1897.]

*New Trial—Specifications—Forfeiture of Mining Claim—Burden of Proof—Work on Other Claims.—Evidence.*

1. NEW TRIAL—*Specifications.*—The designation of a material fact at issue, and a specification that there was a failure to prove that fact in any manner by the party whose duty it is to prove it, show sufficiently wherein the "evidence is insufficient."
2. FORFEITURE.—Forfeiture of a mining claim for non-representation cannot be established except upon clear and convincing proof of the failure to do the work or have the improvements made as required by law.
3. SAME—*Burden of Proof.*—The burden of proof is upon the party alleging a forfeiture of a mining claim for non-representation.
4. REPRESENTATION WORK.—Work which is done to develop a mining claim and for its benefit, is a compliance with the law requiring annual representation work, although it is done without the limits of the claim.
5. EVIDENCE.—A witness who has testified that he knew the mining claim in dispute and had assisted in surveying the same, is competent to testify as to whether or not he knew what purported to be, and what was indicated by marks and monuments as the discovery shaft of the claim, and, if so, what was the mark indicating the point of discovery.

*Appeal from District Court, Yellowstone County.    George R. Milburn, Judge.*

ACTION by Nathan J. Strasburger and others against Samuel A. Beecher. From a judgment in favor of defendant, and from an order denying a motion for a new trial, plaintiffs appeal. Reversed.

Statement of the case by the justice delivering the opinion.

Appeal from a judgment and order denying plaintiffs' motion for a new trial. The motion was heard upon a statement of the case, to which were attached specifications of error. The action was brought to determine the right of possession of a piece of mineral land, 530x1140 feet, situated in the New World mining district, Park county, Montana. The case has already been before this court. (*Hoffman* v. *Beecher*, 12 Mont. 489, 31 Pac. 92.)

The respondent (defendant) filed his application for a patent upon the Silver Queen mining claim. Appellants (plaintiffs) claimed adversely, and contended that the mineral land sought to be patented by the defendant was altogether within the boundaries of their mining claim, known as the "Lake Superior Claim." The defendant denied that the Silver Queen, or any part of it, was within the boundaries of the Lake Superior claim; and in his answer raised the issues of the discovery by the plaintiffs, location and forfeiture for nonperformance of the annual labor between the 1st of January, 1883, and the 1st of January, 1885. The principal errors. assigned by plaintiffs and appellants are alleged erroneous rulings upon the admission of testimony, and the insufficiency of the evidence to justify the findings of the court. The case was tried before the judge, sitting without a jury, and a judgment entered for the defendant.

*Luce & Luce,* for Appellants.

*E. C. Day* and *J. A. Savage,* for Respondent.

HUNT, J.—We will first consider the assignment of error that the evidence is insufficient to justify the findings and decision of the court. The respondent argues that this question is not before this court for review, because the appellants' specifications consist of averments and conclusions of counsel as to what the evidence shows, and that such conclusions are mere statements opposed to the findings of the court, and that, therefore, section 1173 of the Code of Civil Procedure has not been complied with. But we are of the opinion that there is a sufficient assignment or specification of the particulars in which the evidence is insufficient to justify the finding and decision of the court to the effect that the plaintiffs did not perform the requisite amount of labor upon the Lake Superior mining claim from the time of the location thereof, in the year 1882, to the time of the commencement of this suit.

The plaintiffs' specification in this respect was as follows :: "The evidence was insufficient to prove, and the defendant,

did not allege nor prove in any manner, that less than $100 worth of labor had been performed and improvements made during each and every year upon said Lake Superior mining claim, from the time of the location thereof, in the year 1882, to the time of the commencement of this action by the plaintiffs, their grantors and predecessors in interest, or any of them; and the evidence was insufficient to prove, and the defendant did not allege nor show, any failure on the part of the plaintiffs, or any of them, or their grantors or predecessors in interest, or either of them, to comply with the conditions that one hundred dollars' worth of labor should be performed and improvements made during each year upon said Lake Superior claim ; and the testimony was insufficient to prove, and the defendant did not allege nor prove, that in the year 1884 the plaintiffs or their grantors or predecessors in interest did not perform one hundred dollars' worth of labor, and make one hundred dollars' worth of improvements, on said Lake Superior quartz lode mining claim ; and the evidence was insufficient to prove, and the defendant did not prove in any manner, that said Lake Superior quartz lode mining claim, or any part thereof, or any of the surface ground thereof, was open or subject to relocation or to any location on the 1st day of January, 1885, or at any other date or time since June 23, 1882; and the evidence was insufficient to prove that said Jaycox and Davis, the alleged locators of said Silver Queen claim, or either of them, did ever locate or relocate said claim, or any part thereof, in any manner.''

The case of *First National Bank* v. *Roberts*, 9 Mont. 323, 23 Pac. 718, disapproved of specifications which declared that the evidence showed certain enumerated facts or conclusions which were contrary to what the jury found.   The court held that a specification should point out the variance between the facts found by the jury and the evidence, and that there should be a specification that a fact found by the jury is not sustained by the evidence, with the particulars in which the evidence is insufficient to justify the finding.   We have no hesitation in affirming what the court there said.   Furthermore, much that

was laid down is applicable to several specifications, other than the one quoted, in the case at bar; for in them it is declared that the evidence proved that on, etc., which declaration is followed by a resume of the conclusions of counsel as to what was proved on the trial of the case. All such specifications are to be condemned, because, as was held in *First National Bank* v. *Roberts, supra,* this simply puts the appellate court upon an inquiry, as between the conclusions of the judge and the opinion of appellant, as to what the evidence shows. But, in the specification quoted above, the appellants do designate a particular material fact in relation to labor performed upon the Lake Superior mining claim, and do aver that the finding of the court that a requisite amount of labor had not been performed upon the said mining claim was not justified by the evidence in the case, because the defendant did not show any failure on the part of the plaintiffs to comply with the conditions required to be performed. If there is a designation of a material fact at issue, and a specification that there was a failure to prove that designated fact in any manner by the party whose duty it is to prove it, we believe it is sufficient to enable the court to examine whether the finding complained of is sustained by the evidence.

Believing, therefore, that the particular specification was sufficient, we shall consider the evidence bearing upon that point in the case.

The great weight of the evidence is that one Edward Hayes made a valid discovery and location of the Lake Superior claim on June 23, 1882, and filed notice of location in the office of the County Recorder of Gallatin county on August 31, 1882. Experienced miners testified that Hayes discovered mineral, galena and pyrites of copper, where he put his discovery stake, on the westerly part of the Lake Superior, near the center; that, in their opinion, the mineral rock was in place; that Hayes was working on the claim in June, 1882, in a cut 10 or 12 feet long, and extracted some two or three hundred pounds of ore about that time, which was from rock in in place. It also appears that Hayes sufficiently and properly

marked and located his claim, and that the notice of location was good and valid. ⋅ By conveyances and decrees of court, dated in 1882, 1883, and 1886, the plaintiffs proved record title in themselves. We shall therefore pass at once to the question of the alleged forfeiture for non-representation in the years 1883 and 1884.

The plaintiffs introduced an original affidavit of Elias Sperling one of the plaintiffs herein, sworn to on September 22, 1884, and filed on September 27, 1884, with the recorder of the New World mining district, to the effect that at least $100 worth of work had been performed on the Lake Superior lode claim between August 1 and September 1, 1884, and that said expenditure was made by Elias Sperling and others in interest. Plaintiffs also read in evidence another affidavit of Elias Sperling, sworn to on September 22, 1884, to the effect that $100 worth of work had been performed on the Lake Superior and a like amount on other claims in 1884. These affidavits were admitted without objection. Plaintiffs also read a deposition of Elias Sperling, one of the plaintiffs in this suit. Sperling testified that he had known the Lake Superior claim since 1882, and that at that time he saw improvements made on the ground by an open, deep cut, about 20 feet long, near the south end of the claim, and that he did the representation work on the claim in the years 1883, 1884 and 1885; that in 1883 he did $125 worth of work on it on the north end of the claim, in tunneling; that in 1884 he tunneled near the south end of the claim to the value of $225, and in 1885 also tunneled near the south end.

Plaintiffs also offered in evidence the deposition of one Z. H. Daniels, who testified that he was very familiar with the Lake Superior mining claim, and had been since 1883, and that in September, 1884, he had found digging done on different places in that claim that was not done in 1883, when he saw the claim.

James Sweeney, a witness for plaintiffs, testified that he did the assessment work on the Lake Superior claim in 1885 for Elias Sperling; that such work was done in an open cut, and

in an old tunnel, which had been driven a foot or two the year before; that he also did the work later in the year 1885 upon that claim.    The evidence also proves that the Lake Superior was fully represented after 1885, and up to the time of the trial of this suit.    Charles Tappan, a civil and mining engineer and deputy mineral surveyor of Montana, testified that he was on the Lake Superior claim in July or August, 1884, with Elias Sperling; that he was familiar with the conflict between the Lake Superior and the Silver Queen lodes; and that, in making a survey of the Lake Superior claim, he received information about where the claim was, from Mr. Sperling, when he (Tappan) was on the ground, some time in 1884; and that in the summer of 1884 he saw Elias Sperling on the Lake Superior claim, although he did not know whether Sperling had any business there, or was there to see "those men he had representing him."

Tappan also testified that he found several cuts and tunnels on the claim,—some old work, others more recently made. He found one cut (No. 1), 14 feet long, caved in, and about one-half of it outside the north line of the Lake Superior. He put the value of the work done at $720, including 22 feet of a tunnel which adverse claimants built.

On behalf of defendants, a witness named Mather swore that, a few days after his first location, Hayes, the original locator of the Lake Superior claim, moved his location notice north from where it was at first, and put it on another stake, about five or six hundred feet north of the first discovery, giving as a reason for doing so that he thought it was better ground in the latter place, and that the point where this second notice was put is about eighty or ninety feet north of the north line of the Lake Superior.

A witness for defendants, named Rock, testified that he was on the ground in controversy in 1884, and that he did not see any mining improvements done there that year; that a man named Langsdon did some work for the Maggie B. people, and that the Maggie B. joined the Homestake lode on the north, just where the Silver Queen is.

It is well to note at this point that the notice of location of the Silver Queen lode claim sets forth that it is a relocation of the Maggie B.; but it is very plain that the Silver Queen was nothing but an attempted relocation of the Lake Superior mining claim, and that the case was tried upon the theory that it was such a relocation, and that the Lake Superior had been forfeited by reason of nonrepresentation. The plat accompanying the opinion of the court in *Hoffman* v. *Beecher*, *supra*, demonstrates the truth of this statement.

Aaron H. Davis, another witness for defendant, testified that he knew the ground in controversy in 1884; that he then saw very little improvement on it in October of that year; that there were some slight cuts on the ground, but he saw nobody at work on any of these cuts in 1884. On cross-examination the witness admitted that there was quite a cut on the ground in one tunnel, and that a couple of small sets of timber had been put in. He further said that he did not see Elias Sperling on the Lake Superior claim in 1884, and that he was on the ground twice that fall, but did not go near it again until he went to relocate it (witness being one of the locators of the Silver Queen).

Peter H. Branser, another witness for defendant, testified that he knew the Lake Superior claim, and saw Hayes, the original locator of the claim, about the time he located it, in 1882; that in July, August, and September, 1884, he was on the Lake Superior ground frequently, but did not see anybody at work there during those months; that in 1883 he knew that a tunnel on the east end of the claim marked "Tunnel No. 5," was made by Jack Burke; that this work done by Burke was at the south end of the claim, but that in 1884, although he was camped only a short distance from the claim, he saw no one at work there; that he knew Elias Sperling, but did not see him in 1884; and that if Sperling had been at work on that ground for any considerable length of time during August and September, 1884, witness believed he would have seen him.

The testimony of this witness would be entitled to great

weight were it not for the fact that his credibility was much shaken on cross-examination. It appeared thereon that in the testimony of this witness as given on the trial of this case, and certain testimony given by him in a deposition taken in Cooke City in the August preceding said trial, the witness made different answers to the question of whether or not there was actually a discovery made by the locator of the Lake Superior, and whether or not there was any mineral-bearing rock in· place at the point of discovery of the Lake Superior claim.

In the deposition referred to, the witness testified that there was mineral-bearing rock at the last point of discovery by Hayes in 1882; while on this trial witness stated that he did not see any ore that he would call "ore in place," and that he must have been mistaken when he testified by deposition some time before. As this question of discovery was a material issue in the case, the conflicting answers of the witness weakened his whole testimony.

Hamilton Kearns, another witness for the defendant, testified that he knew the ground in controversy in 1882, and has known it since; that there was a tunnel and a cut with three sets of timbers in it, which had been made by Burke, who worked for appellants (plaintiffs) in 1883 on the Forget-Me-Not ground, which adjoined the Lake Superior on the south, and not on the Lake Superior ground; that in 1883 he joked Elias Sperling about doing work off of the Lake Superior ground, and that in 1884 he did not see Elias Sperling at work on the ground; that there never was any work done on this tunnel since the sets of timbers were put in; and that, if there had been any tunnel run on the ground of the Lake Superior claim in 1884, he would have been likely to have seen it. On cross-examination this witness admitted that he had testified in a deposition at Cooke City, some time ·before the trial of this case, to the effect that he did not know of his own personal knowledge of any representation on the Lake Superior claim during 1884, and that he had further testified that in 1883 Sperling had sent some men to represent the Lake Superior, but that they had gone on the Forget-Me-Not ground, and run an open cut.

We cannot think that the defendant made out his plea of forfeiture on this evidence.

"A forfeiture of a mining claim cannot be established except upon clear and convincing proof of the failure of the locators or owners of the claim to have work done or improvements made to the amount required by law." (*Book* v. *Mining Co.*, 58 Fed. 106.)

The positive testimony of Sperling that he was on the claim and did the work in 1884 is not overcome by the mere statements of the witnesses, who were on adjoining premises at divers times, that they did not see him on the Lake Superior claim in 1884, and did not believe he was there. Tappan, the mineral surveyor, saw him there in 1884; and Daniels, an experienced miner, says that in September, 1884, he saw digging within the limits of the claim, that had not been done when he was there in 1883.

That the representation work was done for 1883 appears not only by plaintiffs' witnesses, but by the statement of one of defendant's witnesses (Kearns), who admitted that Sperling had sent men to represent the Lake Superior in 1883, but that they had, through mistake, done work on the Forget-Me-Not claim. The deputy surveyor, however, straightens this point out by testifying that the easterly line of the Lake Superior went directly over the edge of tunnel No. 5, the cut for the entrance to the tunnel being off the claim, and within the Forget-Me-Not limits. Conceding the fact to be that the work was partly off the claim, still, if it was done to develop the Lake Superior claim, and for the benefit of the Lake Superior location, as it clearly was, it may be properly considered as annual assessment work on the Lake Superior claim. (*Hall* v. *Kearny* (Colo. Sup.) 33 Pac. 373; *Smelting Co.* v. *Kemp*, 104 U. S. 636; *Jackson* v. *Roby*, 109 U. S. 440, 3 Sup. Ct. 301; *Book* v. *Mining Co.*, 58 Fed. 106.)

The burden of showing nonrepresentation is upon the party alleging it. *Coleman* v. *Curtis*, 12 Montana 301, 30 Pac. 266. The defendant therefore assumed to prove that plaintiffs or their predecessors did not do the requisite amount of

work for 1883 and 1884. But we cannot sustain the finding of the court in this particular, and must remand the case for a new trial. The defendant has failed to sustain his averments of forfeiture by that clear and convincing proof essential in all cases where forfeiture is relied on.

Appellants have raised several other questions, pertaining, principally, to the admissibility of certain testimony. A witness was asked by the defendant if he knew what purported to be, and what was indicated by marks and monuments as, the discovery of the Lake Superior quartz lode mining claim, and, if so, what was the mark indicating the point of discovery of such claim. The witness to whom this question was put was a miner, and had known the ground in controversy since 1887, and said that he assisted in surveying the boundaries of the Lake Superior in that year. The object of this question was to prove that the discovery of the Lake Superior was north of the north side line of the claim. The court overruled the objection, and the witness answered by saying that he did observe a post at the discovery cut, and that it was a few feet north of the north side line of the Lake Superior, as surveyed by the surveyor. The argument of the appellants is that the ruling was erroneous, because the witness had no knowledge of the condition of the claim prior to August, 1887, and that any answer that he might make would be necessarily hearsay. But we think the ruling of the court was correct. We see no objection to permitting a miner to testify what purported to be the discovery hole or cut of a mining claim, if he can intelligently answer such a question, by reason of his familiarity with the marks and monuments which indicate the discovery on the claim.

We do not think it necessary to pass upon other objections made by the appellants. The judgment is reversed, and the cause remanded for a new trial.

*Reversed and Remanded.*

PEMBERTON, C. J., and BUCK, J., concur.