COPPER MOUNTAIN MINING & SMELTING CO., APPEL-
LANT, *v.* BUTTE & CORBIN CON. COPPER & SILVER
MINING CO., RESPONDENT.

(No. 2,678.)

(Submitted October 7, 1909.    Decided October 23, 1909.)

[104 Pac. 540.]

*Mines and Mining—Representation Work—Forfeiture—Con-
tiguous Group of Claims — Evidence — Burden of Proof —
Equity—Findings—Review.*

Mining Claims—Contiguous Group—Representation Work—Forfeiture.
    1.    Where the annual work done and improvements made upon one
of a group of contiguous quartz lode mining claims have no refer-
ence to a general plan for the development of the whole group, nor
any reasonable adaptation to that end, the expenditures, no matter
how large, cannot be said to have been made in the development of
the consolidated claim, so as to prevent forfeiture of those claims
in the group upon which no representation work had been performed.
Same—Forfeiture—Pleadings—Burden of Proof.
    2.    One claiming the forfeiture of a mining claim for alleged non-
representation must plead it specially and has the burden of estab-
lishing his contention by clear and convincing proof.

Same—Contiguous Group—Representation Work—Burden of Proof.

    3.   The burden of proving that representation work done upon one of a contiguous group of quartz lode claims was done for the benefit of all, that it was adapted to the development of all, and was intended for that purpose, rests upon him against whom a forfeiture is sought for alleged nonperformance of assessment work upon the other claims in the group.

Equity—Findings—Review.

    4.   While in an equity case the supreme court may examine the evidence and determine the questions of fact for itself, it cannot overturn the findings of the trial court unless there is a decided preponderance of the evidence against them.

Mining Claims—Contiguous Group—Representation Work—Evidence.

    5.   Evidence *held* to justify a finding of the district court that plaintiff mining company had forfeited title to certain of a contiguous group of claims, where it appeared that work performed in driving a tunnel on one claim, alleged to have been done with a view to develop all of them, could not reasonably, in the nature of things, have been intended as a part of a general plan of development for the benefit of all.

Same—Contiguous Group—Representation Work—Good Faith.

    6.   The question whether improvements made upon one of a contiguous group of claims were intended for the development of all the claims constituting it, must be determined by the work as manifested by the relation it bears to the claims, irrespective of the good faith entertained by the owner when making the improvements.

*Appeal from District Court, Jefferson County; Lew. L. Callaway, Judge.*

ACTION by the Copper Mountain Mining and Smelting Company against the Butte & Corbin Consolidated Copper and Silver Mining Company. Judgment for defendant, and plaintiff appeals from it and an order denying its motion for a new trial. Affirmed.

Brief and oral argument.in behalf of Appellant, by *Mr. Lewis P. Forestell.*

In the brief the following cases are cited: *Mann* v. *Budlong,* 129 Cal. 577, 62 Pac. 120; *Wright* v. *Killian,* 132 Cal. 56, 64 Pac. 98; *Gear* v. *Ford,* 4 Cal. App. 556, 88 Pac. 600; *Emerson* v. *McWhirter,* 133 Cal. 510, 65 Pac. 1036; *Hall* v. *Kearney,* 18 Colo. 505, 33 Pac. 373; *Lockhart* v. *Rollins,* 2 Idaho, 540, 21 Pac. 413; *McGarrity* v. *Byington,* 12 Cal. 426; *Axiom M. Co.* v. *White,* 10 S. D. 192, 72 N. W. 462; *Chambers* v. *Harrington,* 111 U. S. 350, 4 Sup. Ct. 428, 28 L. Ed. 452.

*Messrs. Walsh & Nolan* - filed a brief in behalf of Respondent; *Mr. C. B. Nolan* arguing the cause orally.

The following cases are cited in the brief: *St. Louis Smelting & Ref. Co.* v. *Kemp*, 104 U. S. 626, 26 L. Ed. 875; *Jackson* v. *Roby*, 109 U. S. 440, 3 Sup. Ct. 301, 27 L. Ed. 990; *Remmington* v. *Baudit*, 6 Mont. 141, 9 Pac. 819; *Strasburger* v. *Beecher*, 20 Mont. 151, 49 Pac. 740; *Power* v. *Sla*, 24 Mont. 251, 61 Pac. 468; *Lawson Butte Con. Copper Mine*, 34 Land Dec. 655; *Copper Glance Lode*, 32 Land Dec. 542; Lindley on Mines, sec. 630; Costigan on Mining Law, p. 280.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant, claiming to be the owner of certain mining ground in Jefferson county under quartz locations designated as the Mammoth, Rarus, Tucker, Anaconda, and Big Butt quartz mining claims, applied to the United States for patents therefor. The plaintiff, claiming a prior right to a portion of the ground under quartz locations designated as the Florence, Jack Taylor, Elaine, Tyrant, Sailor Boy, Stella, Forest, Black Horse, and Twin Boy, filed its adverse claims in the United States land office, and brought this action to determine the right to the possession of the portion in controversy in pursuance of the requirements of the federal statute. (Comp. Stats. U. S. 1901, sec. 2326, p. 1430.) The pleadings are in the form usually pursued in such actions. One of the defendant's claims—the Tucker—was located on February 14, 1907; the others on March 12, 1907. Of the plaintiff's claims the Stella was located on April 1, 1902, the Florence, Jack Taylor, Elaine, Tyrant, Sailor Boy, and Black Horse were located on October 10, 1903, and the Forest and Twin Boy on October 8 and 23, 1903, respectively.

While some question was made at the trial as to the sufficiency of the declaratory statements filed by the respective parties, by objection to their admission in evidence, notice of these features

of the case is not necessary, since they are not seriously urged upon our attention, the only serious contention arising upon the sufficiency of the evidence to sustain the findings of the trial court upon the defendant's plea of forfeiture by the plaintiff for failure to do the representation work upon its claims during the year 1906. The findings were in favor of the defendant. The cause is before us on plaintiff's appeals from the judgment entered upon the findings, and from an order denying its motion for a new trial.

In addition to the claims enumerated above to which plaintiff alleges title, it owns others which are not in controversy in this cause. The record contains no map or plat of the claims of either of the parties, and it is somewhat difficult to understand and show clearly their relative situation. As near as we have been able to gather a knowledge of it from the statements of witnesses and the briefs of counsel, the situation may be described as follows: The claims of plaintiff here involved are situated on the side of Valparaiso Mountain toward the southwest. On that side is a deep gulch, extending along the base of the mountain from the southeast toward the northwest. Beyond this, toward the southwest, is a low hill or spur, extending back into the mountains toward the west and northwest. Upon this is situated the M. L. claim, several hundred feet distant from the claims in controversy. Other claims of the plaintiff, intervening between this and the claims in controversy, lie in the gulch or extend into it from both sides in such a manner as to constitute them all a contiguous group. The defendant's claims also lie upon the side of Valparaiso Mountain, toward the southwest, and hence the conflict with plaintiff's claims. Prior to the year 1905 the annual representation work necessary to preserve title to plaintiff's claims had been done by sinking a shaft near the bottom of the gulch. So far as the evidence in the record shows, this shaft was so situated that it could have been used as a means of developing all the claims in the group and for the extraction of ores found in any of them. During that year the plaintiff, having concluded that the continuance

of the work at this point would be attended with a greater outlay than the circumstances would justify, determined to transfer its operations to a tunnel which had been started by its predecessors on the M. L. claim on a level about forty-two feet above the mouth of the shaft and the bottom of the gulch, and extending toward the southwest. For that and the following year the representation work was done by extending this tunnel; and so it was continued thereafter, the purpose being, as stated by an officer of the company, to intercept a vein appearing in a shaft which had theretofore been sunk on the M. L. claim from the top of the hill. During the year 1906 the tunnel was extended one hundred and forty-six feet in the same general direction. Up to this depth it is parallel with the apparent strike of the vein exposed in the shaft on the M. L. claim. Continued in this direction it would miss the vein entirely and pass through the hill. Subsequent to the bringing of this action its direction was changed, first to the south and then to the east, with the result that the vein in the M. L. was finally intercepted at a distance of more than five hundred feet from its mouth. If driven in its final direction, it would reach the surface of the hill to the east or northeast on a level forty-two feet or more above the bottom of the gulch. This was the situation of affairs at the time of the trial.

Defendant's evidence, besides showing that the work of development, and incidentally that of representation for the year 1906, had all been done in the tunnel as heretofore stated, and that this was the only work that had been done upon any of the group of claims, tended strongly to show that the tunnel could not, within the range of reasonable possibility, be availed of to develop any of the claims on Valparaiso Mountain. The contention of the plaintiff was, and it undertook to show by its witnesses, that by sinking upon the vein at the point of its interception by the tunnel it could drive a cross-cut or drift under the gulch and thus develop and mine the claims beyond, and that the tunnel had been driven with this end in view. There is no controversy but that the expenditure made in the

tunnel in 1906 was sufficient in amount to represent all the claims in the group. The evidence is silent as to whether the vein intercepted in the tunnel is the discovery vein of the M. L.; and, while there is some evidence tending to show that its strike is in the general direction of some of plaintiff's claims across the gulch, there is none furnishing a substantial basis for the inference that it crosses the gulch in their direction or that tends to identify it with any vein found in any of them. Many witnesses, practical miners and mining engineers, were examined, who expressed opinions in support of the claims of the respective parties, giving their reasons therefor. The statements of these witnesses cannot be reconciled.

It is now well settled that the annual expenditure required by the federal statute to preserve the title to mining claims may be made in work or improvements within the boundaries of the claims themselves, or upon one of a group of contiguous claims, or upon adjacent patented land, or even upon adjacent public land, provided only it is made for the purpose of developing the claims and to facilitate the extraction of ore therefrom. (*Strasburger* v. *Beecher,* 20 Mont. 143, 49 Pac. 740; *Power* v. *Sla,* 24 Mont. 243, 61 Pac. 468; *Hall* v. *Kearny,* 18 Colo. 505, 33 Pac. 373; *Smelting Co.* v. *Kemp,* 104 U. S. 636, 26 L. Ed. 875; *Jackson* v. *Roby,* 109 U. S. 440, 3 Sup. Ct. 301, 27 L. Ed. 990; 2 Lindley on Mines, 2d ed., secs. 629, 631.) In *Smelting Co.* v. *Kemp, supra,* it is said: "Labor and improvements within the meaning of the statute are deemed to have been had upon a mining claim, whether it consists of one location or several, when the labor is performed or the improvements are made for its development—that is, to facilitate the extraction of the metals it may contain—though, in fact, such labor and improvements may be on ground which originally constituted only one of the locations as in sinking a shaft, or be at a distance from the claim itself, as where the labor is performed for the turning of a stream, or the introduction of water, or where the improvement consists in the construction of a flume to carry off the debris or waste material. It would be

absurd to require a shaft to be sunk on each location in a con-
solidated claim when one shaft would suffice for all the locations.''
The language used by the court evidently means that, if the
work done on one of the claims has no reference to the other
claims in a group or does not tend to develop all of them in
conformity with a general plan adopted with that purpose in
view, it cannot be considered as work done upon them as a
group or consolidated claim.  This view is borne out by the
decision in *Jackson* v. *Roby, supra,* where the above passage is
quoted in support of a statement made in defining the meaning
of the statute: ''In such case the work or expenditure must be
for the purpose of developing all the claims.  It does not mean
that all the expenditure upon one claim, which has no reference
to the development of the others, will answer.''  If the work is
not a part of a general plan having in view the development of
the group or consolidated claim, so that the ore may be more
readily extracted, and the work has no reasonable adaptation
to that end, then no matter what the amount of it is, it cannot
be said to have been done in the development of the group.  In
such cases it is usually a question of fact for the court or jury,
as the case may be, to say upon the evidence whether the re-
quirements of the law have been met.

The courts are reluctant to enforce forfeitures.  He who
claims such a penalty to defeat the title of his adversary must
plead it specially, and, besides, must establish it by clear and
convincing proof.  (*Strasburger* v. *Beecher, supra.*)  Never-
theless, when it appears, as in this case, that the representation
work done was not done upon all the claims, but upon one only
of the group for the alleged benefit of all, then the burden
shifts, and the requirement that the work must be adapted to
the development of all the claims and was intended for that pur-
pose must be met.  This rule is recognized by all the authorities,
so far as they have been called to our attention.  (*Hall* v.
*Kearney, supra; Copper Glance Lode,* 29 Land Dec. 542;
2 Lindley on Mines, 2d ed., sec. 631.)  It is primarily a ques-
tion within the province of the trial court to determine whether

the proof is sufficiently clear and convincing to satisfy the requirement; and in equity cases, such as this, though this court may examine the evidence and determine the question of fact for itself (Revised Codes, sec. 6253), yet it may not overturn the findings of the trial court unless there is a decided preponderance of the evidence against them. (*Bordeaux* v. *Bordeaux,* 32 Mont. 159, 80 Pac. 6; *Finlen* v. *Heinze,* 32 Mont. 354, 80 Pac. 918; *Watkins* v. *Watkins, ante,* p. 367, 102 Pac. 860.)

Taking into consideration the position of the M. L. claim, with reference to the others in the group, the fact that the tunnel is across the gulch from the others; that it is on a level above the bottom of the gulch; that it extends away from all of the claims in controversy; that it was intended primarily to intercept the vein in the M. L. claim; that it does not appear that this vein traverses any of the other claims or even crosses the gulch in their direction; that, in order to render the tunnel available to develop any of them, it will be necessary to sink a shaft or winze to a depth below the level of the gulch and drift to the eastward many hundreds of feet; that to carry out this plan it will be necessary to install heavy and expensive machinery at the collar of the proposed shaft or winze, to raise the ores, and waste and water encountered, to the level of the tunnel in order to convey them to the surface, whereas this could all have been accomplished with less expense and much more convenience by the use of the shaft in the gulch—taking into consideration the whole of the environment, we think the trial court was justified in its conclusion that the forfeiture alleged by the defendant was clearly and satisfactorily established. The conclusion seems unavoidable that the purpose in extending the tunnel was primarily to encounter pay ore in the M. L. claim, and that it could not reasonably have been intended as a part of any general plan to develop the claims across the gulch or any of them.

Counsel for plaintiff contends that it appears that the work was done by the plaintiff on the M. L. in good faith for the purpose of developing the group of claims, and that the court

should not be permitted to substitute its own judgment as to the wisdom or expediency of the method employed by the owner in adopting the plan pursued. As an abstract proposition we think counsel states the correct rule. (*Mann* v. *Budlong,* 129 Cal. 577, 62 Pac. 120; *Gear* v. *Ford,* 4 Cal. App. 556, 88 Pac. 600.) Nevertheless, the purpose for which the work is alleged to have been done must always be manifested by the relation which it bears to the claim itself. If the plan pursued can have no reasonable adaptation to its alleged purpose, the mere assertion that it was pursued for that purpose does not suffice, even though good faith in its pursuit be conceded.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.