HILL, Executor, Respondent, v. FRANK, et al., Appellants.

No. 8538

Submitted April 3, 1945. Decided September 28, 1945.

164 Pac. (2d) 1003

Mr. H. L. Maury, of Butte, for appellants.

Mr. W. D. Kyle and Messrs. Meyer & Meyer, all of Butte, for respondent.

MR. JUSTICE MORRIS delivered the opinion of the court.

At the outset attention of counsel is called to the fact that in the preparation of the transcript on appeal no attempt is made to comply with section 3 of Rule 8 of this court. Disregard of the rules of court is ground for dismissal of an appeal. The index is not in alphabetical order.

In the year 1912 Louis and H. A. Frank became associated in a number of real estate transactions in the city of Butte. Louis was interested in numerous enterprises but his personal attention was devoted chiefly to the affairs of a firm of building contractors. There was no blood relation between Louis and H. A. H. A. was a lawyer but speculated in Butte real estate from time to time and Louis became a partner in several of H. A.'s real estate deals. The management of such adventures appears to have been left largely to H. A. but each contributed money from time to time in their partnership enterprises. These business relations relative to deals in Butte real estate continued for several years. At the request of Louis a settlement was agreed upon between the two July 1, 1918, and as a result of that settlement H. A. gave a demand note to Louis for $2,300, which note is the subject of this action.

It appears that the real estate operations of the partners were not all successful and in some instances they lost money and some of the realty owned by them was allowed to go to default on taxes. After settlement was made and the $2,300 note was given by H. A. to Louis it does not appear that any new enterprises were entered into by them and subsequent business transaction between them were confined to liquidation of their partnership affairs. H. A., however, testified in the case at bar that they had a number of deals later, but what they were is not shown by the record. The $2,300 note provided for interest

at the rate of 8% per annum; semi-annual payments of interest were endorsed thereon fairly promptly each six months in the sum of $92 for 7½ years after the note was given. The last payment was made June 11, 1926, which paid the interest up to January 1 of that year. H. A. moved to California in 1924 continuing in the practice of law in that state and no further payments were made on the note until May 2, 1929, a period of approximately three years and four months.

On a date not mentioned in the record, H. A. turned over to the Miners Savings Bank & Trust Co. of Butte what he refers to in his correspondence with Louis's attorney as all the property he possessed in Montana.

March 9, 1929, Louis filed his complaint in an action to collect the $2,300 note. He likewise filed the necessary affidavit and obtained a writ of attachment which was served upon R. F. Gaines, a former law partner of H. A., and also filed attachment against Frank & Gaines, a law partnership. It does not appear that anything was obtained under the attachment but the suit resulted in extended correspondence between H. A. Frank and Earle Genzberger, the latter attorney for Louis Frank. Under date of March 26, 1929, H. A. wrote Genzberger as follows:

"I received a letter from Gaines today, telling me you were the attorney for Lou Frank in a suit recently brought against me, and in which attempt was made to attach certain moneys coming from Gaines to me which were assigned to the Miners Bank while I was in Butte in January. I wrote to Lou Frank a week ago in regard to the matter but have heard nothing from him and I did not know at that time who was representing him. I would be very glad if you would send me a copy of the Complaint which you filed in the action and would also take up with Lou Frank the question of attachment. It is absolutely impossible for me to pay this amount in full but I might be able to make some payment on the same (by borrowing it) if I were given time as to the balance.

"As you probably know by this time, the Miners Bank holds

practically everything I own as its security for my indebtedness and has held the same for a long time and I do not believe that you feel that you can successfully defeat the bank's claim under the assignment. Gaines' letter said that you made the suggestion to Charles that the assignment might be attacked in bankruptcy. I think such a remark was probably inadvertent, as such a proceeding if tried in Butte would require an affidavit of residence for a period of six months in Butte and of insolvency and I do not think you would care to advise any client to make such an affidavit in view of the circumstances. Furthermore, I want you to understand as well as Lou Frank that there is no desire on my part now nor has there been at any time to escape payment of this liability. Will you please answer me as soon as possible and tell me what Frank would be willing to accept? I assure you that I will do the best I can to meet any reasonable requirement which he may make.

"* * * Hoping to hear from you by return mail, I remain

"Very truly yours,

"(Signed) H. A. Frank."

This letter was received in evidence as plaintiff's Exhibit G.

April 1, 1929, H. A. again wrote Genzberger, as follows:

"Your letter of March 29th received and it has answered something that has puzzled me ever since you started Lou's suit. When I arrived in Butte this winter, it was after having been sick with the 'flu' for nearly a month here.

"I met Lou on the street the first night I was there and had a talk with him, telling him that I was sick but that I wanted to see him and have a talk with him; that I would be in Butte about a month, anyway; and I asked him if he intended leaving the city at that time to which he answered no.

"I was sick all of the time I was in Butte and under the care of Dr. Jed Freund and at one time had Dr. Harold Schwartz. During the time I was in Butte, I was in bed a good deal more than half the time and unable to do much of anything the rest of the time. I did not see Lou for the reason that I was constantly expecting to get better and intended to see him

before leaving. His belief that I dodged him is entirely a mistake on his part.

"When the Doctors finally agreed that I was not improving any and that I might as well leave, I called Shiner's store and much to my surprise learned that Lou had left for California a few days before.

"Either he had no thought of going to California when I talked with him or he changed his mind after the conversation.

"I certainly would hate to have him or anyone else think I would dodge the issue with them.

"I think the best way to handle our affair is for Lou to tell me what he wants me to do and to the limit of my ability I will do it. There is no use for him assuming $15,000 indebtedness in order to get security on this claim.

"I haven't the money to pay the claim in full by any means but think I could get a moderate amount for a payment and pay the rest in monthly installments with an understanding that the entire claim should be paid within a given period. Talk this over with him and please show him this letter and let me know what he says.

"Very sincerely yours,

"(Signed) H. A. Frank."

April 13, 1929, H. A. wrote a third letter to Genzberger which is as follows:

"I have your letter of April 5th and the contents thereof are very satisfactory and pleasing to me. I have been tied up all week in the trial of a case which resulted in a $25,000 verdict in my favor Thursday. I am going to trial on a case tomorrow morning, hence there will be a few days delay in consummating the matter.

"I suppose you understand that these personal injury cases are handled on a contingent fee and that the lawyer entering a new community has little assurance of steady income.

"Within the last ten months I have secured judgment in four cases, aggregating $82,000, only one of which has been paid, but I have hopes that the rest will be compromised or paid

before very long. Such a consummation will enable me to square up everything in Butte and nothing would give me greater satisfaction.

"With kindest regards, I remain

"Very sincerely yours,

"(Signed) H. A. Frank."

These last two letters were received in evidence as Exhibits H and I.

May 2, 1929, $500 was endorsed on the note: $460 of this amount was applied to pay five semi-annual interest installments which paid the interest up to July 1, 1928; the remaining $40 of the $500 was endorsed on the note under the date of May 2, 1929, as payment on "a/c." of interest and was taken into account when a later payment was made.

July 22, 1929, an additional payment of $200 was endorsed on the note: $144 of this amount was applied to the payment of interest which, with the $40 previously paid on account, equalled two semi-annual interest payments and paid the interest up to July 1, 1929, and the balance of $56 making up the $200-payment was applied on the principal of the note.

February 30, 1930, an additional payment of $1,000 was endorsed on the note; $269.28 of that amount was applied to pay the interest up to January 1, 1931, and the balance of the $1,000, or $730.72, was applied on the principal reducing the principal amount of the note then due to $1,513.28.

There was received in evidence at the trial of the action plaintiff's Exhibit B, which is as follows:

"April 24, 1929

"Miners Savings Bank & Trust Co.

"Butte, Montana

"Gentlemen:

"I am indebted to Louis Frank of Butte, Montana upon a promissory note and wish to secure him for the payment of the same.

"To that end I hereby request that you hold any and all securities now held by you and belonging to me first, to secure

any and all obligations due to your bank and second, to secure the payment of my obligation to Lou Frank. I am sending this letter to Mr. Earle Genzberger, attorney for Lou Frank in duplicate and your acknowledgment to him of your willingness that this should be done will be greatly appreciated by me.

"Very truly yours,

"HAF:MBO (Signed) H. A. Frank."

To this exhibit there is attached the following notation:

"Original of above letter of instructions received May 1, 1929 and acquiescence thereto given as of same date.

"Miners Savings Bank & Trust Co.

"(Signed) T. J. Fenlon Cashier"

Louis Frank died January 14, 1935. No further payments were made upon the note after the $1,000 referred to above was paid during Louis Frank's lifetime. The complaint in the action at bar was filed December 17, 1938, by the executor of Louis Frank's will.

The defendants other than H. A. Frank had no material interest in the matter except the other members of H. A. Frank's family and their financial interests were dependent upon the merits of H. A. Frank's contentions. General demurrers by the defendants were overruled. H. A. Frank and his two children, Vilma and H. A. Jr., answered by general denial followed by an affirmative defense. It appears that the two children were interested by reason of their being named as beneficiaries in two life insurance policies on the life of their father which policies were pledged to the Miners Bank.

The entire defense in effect is that Louis Frank did not credit H. A. for payments made by the latter on the note. H. A. in his pleadings expresses the utmost faith in the integrity of Louis and states that when Louis advised him July 1, 1918, that he was indebted to Louis in the amount of $2,300, he did not question the correctness of the amount. H. A. kept no books of the business transactions relating to the affairs of the partnership so far as the record shows, but testified that he attributed the failure of Louis to give him proper credit to carelessness in

reporting certain transactions to his (Louis's) bookkeeper. In short, the alleged defense set up is based upon the memory of H. A. Frank as to the business transactions had in the more than eleven years between July 1, 1918, the time the note was given, and the time the letters hereinabove mentioned were written in which H. A. does not, in any manner, question the correctness of the amount sued for in the action begun March 9, 1929. H. A. paid up several years of back interest and made a substantial payment on the principal while Louis was still alive and did not question the amount due to Louis.

The cause was tried by the court sitting without a jury. H. A. Frank testified at length; the deposition of Sol Genzberger, for many years the bookkeeper of Louis Frank, was taken and admitted in evidence; numerous exhibits were presented and oral testimony of other witnesses was received. The court had the matter under advisement for some three months and filed its findings of facts and conclusions of law and gave judgment in favor of the plaintiff for the full amount demanded with accrued interest and costs.

The pertinent findings of fact are as follows: (1) That a settlement between Louis Frank and H. A. Frank was arrived at on July 1, 1918, and it was found H. A. was indebted to Louis in the sum of $2,300, and the $2,300 note involved in this action was made, executed and delivered at that time in acknowledgment of such indebtedness.

Finding No. 4 of the court is to the effect that the above letter of April 24, 1929, addressed by H. A. Frank to the Miners Savings Bank & Trust Co., plaintiff's Exhibit B, was given to secure the payment of the principal sum and interest of the note mentioned. The court then in its other findings refers to the list of securities mentioned in plaintiff's Exhibit B and further found that certain payments were made on the note and interest reducing the amount to $1,513.28. By finding No. 10 certain claims of H. A. Frank on account of expenditures made by him in the sum of $166.74 were found to be expended for the use and benefit of "Lou" Frank but that any claim therefor

was barred by the provisions of section 9031, Revised Codes. It was further found that H. A. was indebted to the Miners Bank & Trust Co. or its successor for $12,557.20, evidenced by promissory notes, and that the securities herein referred to in plaintiff's Exhibit B were pledged to secure Louis Frank as a junior obligee to the bank and that the securities mentioned were to be held first to secure the indebtedness of said bank. It was further held that Vilma Jane Frank and Henry A. Frank, Jr., had only such right in such securities as should remain after the liens of the Miners National Bank and the plaintiff's obligations were satisfied.

Conclusions of law were made pursuant to the findings and judgment entered accordingly. From such judgment the defendants appealed.

The first error specified is that the court failed to make any findings on the question of laches "although defendant's counsel made three express requests for such findings." Under this alleged error it is argued that when the suit of March 9, 1929, was commenced and the writ of attachment was issued no summons was served and no other proceeding was taken; that after the suit was begun H. A. was frequently in Butte, a fact known to both Louis and his attorney; that Louis lived five years and ten months after the suit was begun and Louis was, by reason of not pressing his suit, guilty of laches, the suit had become stale and for that reason was barred.

The second assignment of error expresses the conclusion that ██ "the court erred in not dismissing the complaint because of the laches of Louis Frank in his lifetime." Laches is "an unexcused delay in asserting rights during a period of time in which adverse rights have been acquired under circumstances that make it inequitable to displace such adverse rights for the benefit of those who are bound by the delay; such a delay in enforcing one's right as works disadvantage to another; * * * undue delay on complainant's part in asserting his own (rights), to the prejudice of the adverse party." 30 C. J. S. Equity, sec. 112.

We think the plea for laches applies in this case with far greater force to the defendant than to the plaintiff. The plaintiff was over-patient with his old business associate and the only plea of the defendant set out in his letters when the suit was begun March 9, 1929, was for further time in which to pay. No claim was made that the demand was unjust until after Louis's death. All the years that the debt was outstanding and payments were being made on the interest no question was raised by H. A. about the note not representing what it purported to represent and, if there were any payments made by H. A. or if he had anything due him from Louis Frank by reason of any of their various deals, he should have made known his alleged rights during the lifetime of his business associate. But instead he remained silent on the only defense now made by which he seeks to defeat plaintiff's claim. This long silence while Louis was still alive deprives the testimony of the defendant as to payments of any right to serious consideration. "The plea of payment tenders an affirmative issue, and the burden is upon him who asserts it." Vesel v. Polich Trading Co., 96 Mont. 118, 130, 28 Pac. (2d) 858, 861. When the defendant had the numerous opportunities to which he refers to confront Louis and demand proof that the defendant had not been given proper credits on the note and remained silent, he may not now deny the obligation shown by his written contract. Louis Frank admittedly employed a bookkeeper of unusual ability and the defendant kept no books but relies solely on his memory as to transactions running over a period of approximately twenty years. It might be contended that the testimony of H. A. Frank as to claimed credit on the Cammack transaction was uncontradicted, and that having been admitted in evidence it may not be disregarded by the trial court. The record does not disclose an agreement or understanding that the $500 was to be applied on the note in suit; assuming the truth of defendant's testimony with regard to this transaction, we think it could establish, at most, a claim in favor of defendant against plaintiff. Since no action was commenced to enforce

such claim within the period prescribed by the statutes of limitation, the same was clearly barred, which defense is pleaded in plaintiff's reply herein.

On the question of plaintiff's laches, to bar a claim of debt ██ on a ground of laches in any action, equitable or otherwise, we think that one who relies upon such a defense must affirmatively show that the delay in pressing suit has resulted in injury to the debtor. It appears to us that Louis Frank, after H. A. had shown his intention to pay the note and affirmed such intention by making substantial payments immediately subsequent to the time suit was begun in 1929, and also giving an order to the Butte bank to hold the securities they had as collateral to pay any balance due to Louis Frank after the bank's own indebtedness was satisfied, being thus assured of H. A.'s good intention in the premises, refrained from distressing his old business associate in enforcing collection of the balance due on the note. We think Louis's leniency was an act of grace from which H. A. suffered no injury. See 19 Am. Jur. Equity, sections 498 and 503.

We have no doubt that the able trial judge took this view of the matter when he came to make findings on the question of laches. See Spadoni v. Maggenti, 121 Cal. App. 147, 8 Pac. (2d) 874. It was well said by counsel for plaintiff in their brief that the trial court in ignoring the request of defendant for findings on the question of laches "was but an indication that there was no evidence in the record to sustain such a claim or entitle it to the dignity of requiring a finding." This court said in the case of Brundy v. Canby et al., 50 Mont. 454, 474, 148 Pac. 315, 320: "Laches may arise from an unexplained delay short of the period fixed by the statute of limitations, still laches will not be presumed from such delay alone. * * * It follows that a mere delay in commencing suit, short of the period of limitations, need not be excused in the complaint." It was said in United States National Bank v. Shupak, 54 Mont. 542, 546, 172 Pac. 324, 325: "So long as this action was brought within the period of the statute of limitations, defendant cannot claim exemption

from liability by reason of plaintiff's failure to present it for payment or commence this action at an earlier date.''

In the case of First State Bank v. Lang, 55 Mont. 146, 157, 174 Pac. 597, 600, 9 A. L. R. 1139, this court said: ''There is no merit in the defense of laches. Appellant was primarily liable on the Smith-Lane note, and this action was commenced within the period of the statute of limitations.'' Defendant's contentions as to the laches of Louis Frank are void of merit. The letters H. A. addressed to Louis's attorney and the letter to the bank, all set forth herein, are themselves sufficient to sustain the judgment of the trial court. H. A. filed no claim with the Executor of Louis's estate. This he should have done if any thing was justly due him. He never at any time claimed that he had made payments for which he had received no credit until such claim was set out in his answer in the instant case filed October 28, 1942, seven years after the death of Louis Frank.

Assignment of error Number 4 is to the effect that, H. A. ██ and Louis Frank being engaged in a joint adventure, Louis Frank did, on August 18, 1918, six weeks after the alleged settlement was made July 1, 1918, and the $2,300 note was made and given pursuant to such settlement, sell back to one Ellen Cammack a lot which H. A. and Louis had previously bought from her and for which she paid Louis $1,000, $500 of which belonged to H. A. but all of which Louis kept as his own. On the back of the contract between H. A. and Louis Frank and Mrs. Cammack this endorsement appears: ''8/29/18 H. A. Frank's interest assigned to Louis Frank.'' The assignment notation made on the back of the Cammack contract was obviously made pursuant to the following instruction given the bank:

 ''August
 ''Seventeenth
 ''1918.

''Miners Savings Bank & Trust Co.,
 ''Butte,

"Gentlemen:

"I have, and do hereby transfer and assign unto Louis Frank all of my right, title and interest in and to that certain property located on the Southeast Corner of Second Street and Utah Avenue in the City of Butte, Montana.

"The legal title to this property was placed in your bank under an escrow agreement heretofore made between Ellen Cammack and H. A. Frank and Louis Frank, and you are hereby authorized and directed to carry out the terms of said escrow with Louis Frank, eliminating me from any interest in the same.

"Yours very truly,

"HAF-MT (Signed) H. A. Frank."

Such endorsement was obviously made by the bank as escrow holder. H. A. claims he was to receive what he had in the Cammack property for the assignment to Louis. The trial court's findings as to this transaction are numbers 11 and 12. No. 11 describes the transfer and No. 12 relative thereto is as follows: "12. That the evidence does not disclose what consideration, if any passed from the said Lou Frank to the defendant, H. A. Frank, for such transfer, and does not disclose that the consideration, if any, was not met by the said Lou Frank in his lifetime." The burden was on H. A. Frank affirmatively to show what he was entitled to for the assignment of his interest, and that he had never received such amount. This burden he did not sustain. The finding of the court was correct. If anything was due H. A. he was negligent in demanding it at some period during Louis's lifetime when the merits of his claim could have been discussed and the claim verified if any just claim he had.

Assignment of error No. 5 sets out the various payments endorsed on the note; assignment No. 6 alleges overpayment in each payment of interest. The note is in evidence and no interest payment is endorsed thereon until after the amount endorsed had accrued. The assignment has no merit. We find nothing in any of the additional assignments of error that merit

more than passing consideration. None of the contentions as to alleged errors on the part of the trial court are established by any substantial evidence. Error by the trial court must be affirmatively shown. It will not be presumed. Swain v. McMillan, 30 Mont. 433, 441, 76 Pac. 943.

By a long line of decisions this court is committed to the rule that we "will not overturn the findings of the trial court unless there is a decided preponderance of the evidence against them * * *, and, when the evidence, fully considered, furnishes reasonable grounds for different conclusions, the findings will not be disturbed." Allen v. Petrick, 69 Mont. 373, 222 Pac. 451, 452; Copper M. M. & S. Co. v. Butte & Carbin Co., 39 Mont. 487, 104 Pac. 540, 133 Am. St. Rep. 595; Nolan v. Benninghoff, 64 Mont. 68, 208 Pac. 905; Fitschen Bros. Co. v. Noyes' Estate, 76 Mont. 175, 246 Pac. 773; Shepherd & Pierson Co. v. Baker, 81 Mont. 185, 262 Pac. 887; Dahlberg v. Lannen, 84 Mont. 68, 274 Pac. 151; Poague v. Poague, 87 Mont. 433, 288 Pac. 454; Bickford v. Bickford, 94 Mont. 314, 22 Pac. (2d) 306; Vesel v. Polich Trading Co., supra; McLaughlin v. Corcoran, 104 Mont. 590, 69 Pac. (2d) 597.

The judgment is affirmed.

Mr. Chief Justice Johnson and Associate Justices Adair and Cheadle concur.

Mr. Justice Angstman (dissenting).

My associates stress the point that the defense relied upon by H. A. Frank is based upon his memory over a period of eleven years. The two items that he claims credit for are undisputed in the record. That he paid the taxes is conceded and the court so found. That he received no credit therefor is also conceded and is shown by the endorsements on the note. The $500 item relied upon by H. A. Frank is also not disputed and is sustained by documentary evidence.

The note in suit contains the following endorsements on the back thereof:

| Date | | | Interest | Principal |
|------|---|---|---------|-----------|
| Jan. 31, 1919, | to | 1/1 | 92.00 | |
| July 15 " | to | 7/1 | 92.00 | |
| Jan. 13, 1920 | | 1/1 | 92.00 | |
| July 16 " | | 7/1 | 92.00 | |
| Jan. 10, 1921 | | 1/1 | 92.00 | |
| July 27/21 | to | 7/1 | 92.00 | |
| Jan. 23/22 | to | 1/1 | 92.00 | |
| July 18/22 | to | 7/1 | 92.00 | |
| Jan. 17/23 | to | 1/1 | 92.00 | |
| Aug. 6/23 | to | 7/1 | 92.00 | |
| Jan. 9/24 | to | 1/1 | 92.00 | |
| July 8/24 | to | 7/1 | 92.00 | |
| Jan. 10/25 | to | 1/1 | 92.00 | |
| July 10/25 | to | 7/1 | 92.00 | |
| Jan. 13/26 | to | 1/1 | 92.00 | |
| May 2/29 | to | 7/1/28 | 460.00 | |
| May 2/29 a/c | | | 40.00 | |
| July 22/29 | to | 7/1/29 | 144.00 | 56.00 |
| 12/30/30 to | | 1/1/31 | 269.28 | 730.72 |

Defendant H. A. Frank testified that he had not seen the note from the time it was given until plaintiff showed it to him in 1936 and hence had no knowledge as to how payments and credits were endorsed on the note and that all credits were not so endorsed. The defendant H. A. Frank figured and thought that he and Lou were about square when he made the last payment in 1930 amounting to $1,000. The several items of $92 credited as interest on the note at various times were not made by defendant Frank in person but were made by the Jones Storage & Transfer Company, or some other representative of defendant H. A. Frank.

H. A. Frank contends that there was a credit of $500 that should have been applied on the payment of principal on the note as of August 18, 1918, and which is not endorsed as a pay-

ment. He also contends that he paid taxes on property owned jointly by himself and Lou Frank and that if one-half thereof, or $166.24, be also credited as payments on the note, it is fully paid. He also contends that when the above credits are taken into account the items of $92 credited as payment of interest on the note are erroneous in that a part of each of such payments should have been applied as payment of principal.

The record discloses that Lou Frank commenced an action in Silver Bow county on the same note on March 7, 1929, which was about five years and ten months before his death, caused attachment to be issued and levied, but that no summons was ever served upon H. A. Frank during the lifetime of Lou Frank, though H. A. Frank was frequently in Silver Bow county to the knowledge of Lou Frank; that after the commencement of that action H. A. Frank made three payments on the note, one for $500, one for $200, and the last for $1,000, believing that the payment of the $1,000 about squared the account, when there was taken into consideration the $500 credit and the taxes paid by him on property owned jointly by him and Lou Frank. All of these payments it should be noted were made by H. A. Frank after the writing of the letters set out in the majority opinion. The trial court found that the taxes which defendant Frank paid were paid from the year 1918 to the year 1926, and that they were barred by limitations. The court made no express finding as to the $500 item that H. A. Frank contended should be credited as payment on the note. The evidence is undisputed that this item was due and owing to H. A. Frank from Lou Frank in that a lot valued at $1,000, owned jointly by them, was turned over to Ellen Cammack in payment of a joint obligation to her by Lou and H. A. Frank of $1,000; that thereafter Lou Frank purchased the property for which the $1,000 obligation was paid under a promise that he would reimburse H. A. Frank for anything he had in the property.

The main contention made in this proceeding by the defendants is that Lou Frank in his lifetime was guilty of laches in not prosecuting the action which was instituted in 1929 and

in not causing summons to be served upon H. A. Frank, and that this plaintiff has no better right than Lou Frank would have were he living. It is well settled that laches will bar an action if because of the delay there has been such a change in the relations of the parties as to prejudice the rights of defendant in making his defense. Lewis v. Bowman, 113 Mont. 68, 121 Pac. (2d) 162. See, also, 30 C. J. S., Equity, sec. 118, page 540 et seq., and 21 C. J. 231.

"The mere bringing of an action does not relieve a person from the imputation of laches. The lack of diligence in prosecuting it after it is brought leads to the same consequences as delay in bringing it. Witnesses die or disappear, or the facts fade from memory. The positions of the parties change, or the subject of the controversy fluctuates in value. The right sought to be enforced becomes doubtful or uncertain, or it becomes impossible for the court to administer equity between the parties with any degree of certainty. In all such cases the court will, in its discretion, refuse to entertain the action and leave the parties as they are." Streicher et al. v. Murray, 36 Mont. 45, 92 Pac. 36, 40.

It has been declared that where the defendant has lost a defense through the bar of the statute because of the delay of the plaintiff in asserting or prosecuting his claim, plaintiff's claim is barred by laches. This was so held in Murphy v. DeFrance, 105 Mo. 53, 15 S. W. 949, in Chapman v. Bank of California, 97 Cal. 155, 31 Pac. 896, and in Vermilion County Children's Home v. Varner, 192 Ill. 594, 61 N. E. 830, and see Dohnerts' Appeal, 64 Pa. 311.

"A court of equity applies the rule of laches according to its own circumstances. Whether the time the negligence has subsisted is sufficient to make it effectual is a question to be solved by the sound discretion of the court. * * * The law of laches, like the principle of the limitation of actions, was dictated by experience, and is founded in a salutary policy. The lapse of time carries with it the life and memory of witnesses, the muniments of evidence, and other means of proof. The rule which

gives it the effect prescribed is necessary to the peace, repose, and welfare of society. A departure from it would open an inlet to the evils intended to be excluded." Mahaffy v. Faris, 144 Iowa 220, 122 N. W. 934, 936, 24 L. R. A., N. S., 840, and see Gray v. Bloom, 151 Iowa 566, 132 N. W. 42.

Here defendant's defenses, if treated as separate and independent claims or set-offs, are long since barred by the statute of limitations unless for some reason the running of the statute has been tolled. The claim for reimbursement for taxes paid was not barred when Lou Frank commenced his action against H. A. Frank. Had that action been prosecuted with reasonable diligence, or at all, H. A. Frank could have pleaded that item as a set-off. The commencement of that action, according to the majority rule, stopped the running of the statute against an existing set-off. See note, 127 A. L. R. 910. Failure to serve summons in that action upon H. A. Frank or to otherwise prosecute the action prejudiced the right of defendant to plead this set-off if it may not now be pleaded. While that action was pending defendant H. A. Frank was privileged to rest secure in his right to plead this item as a set-off when it came time for him to plead in the case. In consequence, if defendant may not now plead this set-off as a defense he has been prejudiced by the lack of prosecution of the action brought by Lou Frank. It seems to me that since this action seeks identically the same relief sought in the action brought by Lou Frank, we should either hold that the running of the statute against this set-off was tolled by the action commenced by Lou Frank in his lifetime or else hold that the doctrine of laches applies and that plaintiff is precluded from maintaining this action at least so far as defendant has been prejudiced by his inability to plead the set-off existing by reason of the payment of taxes.

As to the $500 credit claimed by defendant H. A. Frank, if we treat it as a separate and independent set-off, it would have been barred even at the time of the institution of the action by Lou Frank. However, it does not follow that Lou Frank would have elected to plead the statute of limitations had the action

been prosecuted with diligence and had defendant pleaded the set-off. The circumstances point to the conclusion that Lou Frank, like H. A. Frank, must have considered the account squared by the payment of the $1,000 after the institution of the action or else the action would not have been permitted to slumber for nearly six years while Lou Frank was still alive and more than four years after H. A. Frank made the last payment.

It is well settled that an action may be barred by long lapse of time where one who participated in the transaction has in the meantime died. 19 Am. Jur., Equity, sec. 511, page 355. Delays under such circumstances create the presumption that the deceased participant would, if living, testify unfavorably to plaintiff. 30 C. J. S., Equity, sec. 119, page 543, note 43. This principle found expression in the case of Halstead v. Grinnan, 152 U. S. 412, 14 S. Ct. 641, 643, 38 L. Ed. 495, where the court said:

"The defense itself is one which, wisely administered, is of great public utility, in that it prevents the breaking up of relations and situations long acquiesced in, and thus induces confidence in the stability of what is, and a willingness to improve property in possession; and at the same time it certainly works in furtherance of justice, for so strong is the desire of every man to have the full enjoyment of all that is his, that, when a party comes into court and asserts that he has been for many years the owner of certain rights, of whose existence he has had full knowledge, and yet has never attempted to enforce them, there is a strong persuasion that, if all of the facts were known, it would be found that his alleged rights either never existed or had long since ceased."

"The courts have uniformly and wisely held, after a long and unexplained delay in instituting or prosecuting a suit for the recovery of a debt, especially where there is no allegation of fraud or trust, that the allaying hand of time shall be deemed to have composed all strife, and quieted all contentions so that 'men who are mortal, shall not permit controversies to become

immortal.' '' Covington v. Griffin, 98 Va. 124, 34 S. E. 974, 975. The court erred, in my opinion, in not finding that plaintiff's action is barred by laches.

I think the judgment should be reversed and the cause remanded with directions to dismiss the action.

Rehearing denied Jan. 23, 1946.