HILL ET AL., RESPONDENTS, *v.* MCKAY, APPELLANT.

(No. 2,481.)

(Submitted January 17, 1908.   Decided January 25, 1908.)

[93 Pac. 345.]

*New   Trial—Surprise—Affidavit—Insufficiency—Neglect—Diligence—Different Result—Practice.*

Practice—New Trial—Motion—Affidavits—Filing—Time.
  1.  Section 1173, Code of Civil Procedure, allows ten days after notice of motion for a new trial in which to prepare, serve, and file the

affidavits, statement, etc. A finding and decision having been filed August 30, 1905, a written stipulation was made on September 6th that either party might have thirty days' "additional" time in which to give notice of intention to move for a new trial, and ninety days' "additional" time in which to prepare, serve, and file affidavits, bills of exception, or statements in support of the motion. Appellant gave notice of motion for a new trial October 7th, and all the affidavits were filed January 3, 1906. *Held,* that appellant was entitled to thirty days in addition to the four days of the ten-day period not yet expired when the stipulation was made, in which to serve notice of motion for a new trial, and that the ninety days stipulated for in which to file affidavits, bills of exception, or statements, etc., in support of the motion, began to run on the expiration of ten days after the service of notice, and hence that the affidavits were filed in time.

New Trial—Surprise—Showing Necessary.

2. A new trial, asked for on the ground of surprise, will be granted only when it is clearly shown that the movant was actually surprised; that the facts from which the surprise resulted were material, that the verdict or decision resulted mainly from these facts, that the alleged condition was not due to movant's inattention or neglect, that he acted promptly and claimed relief at the earliest opportunity, that he used every means reasonably available at the time of the surprise to remedy its effect, and that the result of a new trial will probably be different.

Same—Surprise—Affidavit—Insufficiency—Neglect.

3. Where, from an affidavit filed in support of a motion for a new trial on the ground of surprise, it appeared only by way of conclusion of affiant what inquiry he made, prior to trial, of two witnesses whose testimony constituted the alleged surprise, or what they told him they would testify to, and in the absence of a positive statement that the witnesses whose conduct was complained of were the only ones called to testify in affiant's behalf in aid of his contention as to a water right (the record on appeal not containing any of the evidence introduced at the trial), and where after trial many other witnesses were found who could furnish the desired evidence, *held,* that the application was properly refused, since from such showing the inference was permissible that movant was negligent in the search for evidence to sustain his contention.

Same—Surprise—Showing—Insufficiency—Diligence.

4. The showing made by the applicant for a new trial on the ground of surprise, referred to in the foregoing paragraph, was further insufficient, for want of prompt action and diligence on his part in an endeavor to avoid the result of the alleged surprise, where he failed to ask for a continuance, or neglected to call the attention of court and counsel to the matter, or ask for a reopening of the cause, which was tried by the court, without a jury, and held under advisement for almost three months before the decision was rendered.

Same—Surprise—Appeal—Record—Different Results.

5. Where, on appeal from an order denying a new trial, asked for on the ground of surprise, occasioned by the testimony of witnesses relied on by appellant to prove his contention, the evidence given at the trial is not incorporated in the record, the supreme court will not order a reversal, since, even conceding that the new witnesses would testify as stated in the movant's affidavit filed in support of the motion, it cannot say that the result reached at the trial would probably be different if a new one were granted.

*Appeal from District Court, Madison County; Geo. B. Winston, Judge.*

ACTION by Charles C. Hill and others against Fred. Ellinghouse and others. A decree was rendered in favor of plaintiffs, and an order was entered denying the motion of defendant Alex. McKay for a new trial for surprise, from which order he appeals. Affirmed.

*Mr. E. B. Howell,* for Appellant.

*Messrs. Word & Word,* and *Mr. E. J. Callaway,* for Respondents.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This action was brought to obtain a decree adjudicating the respective rights of the parties plaintiff and defendant against each other and among themselves, to the use of the waters flowing in Indian creek, a tributary of Ruby river, in Madison county. Each of the eleven plaintiffs claims separate rights, though they were represented by a single attorney. The eight defendants were represented by the same attorneys, though each filed a separate answer. From this condition of affairs it would seem that the parties plaintiff and defendant made common cause against each other, but, as among themselves, proceeded upon the theory that their respective interests were not conflicting. In any event, the trial resulted in findings of fact and conclusions of law upon each right involved, as to the date of appropriation, the amount thereof, the character of the beneficial use, etc., and a decree was entered accordingly.

The defendant McKay (appellant) is the owner of certain lands situate on Mill creek, another tributary of Ruby river. He also owns a flouring-mill, situate on the same stream, which is propelled by water-power. It seems that the water diverted by him through his mill ditch, and for the irrigation of his

lands on Mill creek, does not, after its release, return to Indian creek, but flows into the channel of Mill creek. The issue at the trial, so far as appellant is concerned, was whether the right asserted by him through his mill ditch was superior to the rights of the other claimants during the season of the year when irrigation was necessary for farming purposes, or whether it was available only during the other portions of the year.

The appellant claims as the successor in interest of one Hall. now dead, who, with others, built the mill and constructed the ditch in 1866. The court found that "it was the intention of those who built the mill ditch and appropriated the waters of Indian creek thereby to use the waters for mill and power purposes when the waters of Indian creek were not needed for irrigation purposes." It was accordingly adjudged that the defendant's use must be confined to the autumn, winter, and early spring months, when the "waters of Indian creek are not required for the proper irrigation of lands." This defendant has appealed from an order denying his motion for a new trial. The ground of his motion was surprise, in that two witnesses, introduced by him to establish his right, made statements at the trial directly contrary to what they had induced him to believe they would make when he had interviewed them to ascertain what their testimony would be touching his right. His affidavit in support of the motion states, in substance, that he was charged by his counsel with the duty of finding and producing witnesses in support of his water-right through his mill ditch; that in performance of this duty he questioned witnesses John Hatfield and William Ferm as to the use of the water in the mill during the time Hall was one of the owners of it; that he questioned them fully, but neither of them disclosed to him any fact or information tending to impair the superiority of his right during Hall's ownership, or tending to show that Hall ever recognized any right in Indian creek superior to the mill ditch right; that, on the contrary, Hatfield, when questioned by affiant as to the conduct of Hall when the farmers without his consent diverted the water from the mill ditch, told him

that Hall "went and took it," meaning and intending that affiant should understand thereby that Hatfield would testify that under such circumstances Hall reclaimed the water, thus asserting the superior right of the mill ditch; that, relying upon the information so given him by Hatfield and Ferm, and believing that they had fully stated the facts to which they would testify, affiant called them to testify in his behalf, and took no steps to secure testimony from other witnesses to establish the facts; that Hatfield testified upon the trial directly contrary to what he had informed affiant prior to the trial, by saying that Hall had an understanding with the farmers below the head of his ditch that when they wanted the water they could take it and shut the mill down; that the farmers took the water whether it was needed for the mill or not; that this arrangement was the result of a bargain, made about the year 1866 with one Bateman and sundry other persons; that William Ferm testified that Hall had obtained permission from certain unnamed persons to build the mill ditch, with the understanding that when they needed the water it was to be returned to them; that Ferm, being called by plaintiffs as their own witness in rebuttal, testified positively that Hall had told the witness that he used the water from Indian creek with the consent of the people living along the stream below; that both these witnesses constantly associated with the plaintiffs and their witnesses; and, upon information and belief, he charges that their testimony at the trial was the result of collusion with plaintiffs. It is further alleged that if a new trial should be granted, the appellant can produce six witnesses, naming them, whose testimony will show that Hall, his predecessor, always possessed and asserted the right to the use of the mill ditch, to the exclusion of all other rights below the mouth of that ditch. The affidavits of these witnesses were also used in support of the motion, and, generally, support the Hall right, as claimed by the appellant. The plaintiffs filed no counter-affidavits, and hence the statements of the appellant, so far as they are statements of fact, are not controverted.

Do the facts stated make out a case upon which the court should, in its discretion, have granted a new trial? Before proceeding to a determination of this question, however, it is necessary to notice a question of practice, arising upon an objection to the consideration of the affidavits, that they were filed out of time. The findings and decision in the case were filed on August 30, 1905. Of this fact the parties all seem to have had notice. On September 6th the parties, by their attorneys, entered into a stipulation in writing that any one, either of the plaintiffs or defendants, who might be dissatisfied with the decision, might have thirty days "additional" time in which to give his notice of intention to move for a new trial, and also ninety days "additional" time in which to "prepare, serve, and file" affidavits, bills of exception, or statements in support of his motion for a new trial, in case he desired to make such motion. Notice of intention was given by appellant on October 7th. The affidavits were all filed on January 3, 1906. On the hearing of the motion, objection was made that under the terms of the stipulation the affidavits should have been filed within ninety days after September 20th; in other words, since the stipulation was made on September 6th, four days before the time for giving notice had expired (Code Civ. Proc., sec. 1173), the ninety days stipulated for should be computed from the tenth day after the expiration of this period, or from September 20th. The statute, however (section 1173, *supra,* subdivision 1), allows ten days after the notice is given in which to prepare, serve, and file the affidavits, statement, etc., in support of the motion. Since this is so, the ninety days stipulated for for this purpose clearly began to run on the expiration of ten days after the service of notice, else the term "additional," used in the stipulation, can have no significance. The effect of the use of this term in the stipulation extending the time for giving notice (supposing that an extension of time for the giving of this notice may lawfully be made), was to allow thirty days besides the four days of the ten-day period not yet expired. It was so construed by the parties, and prop-

erly so (*Emeric* v. *Alvarado*, 64 Cal. 529, 2 Pac. 418) ; for there can be no addition where there is not something to which it may be made.   The same rule must apply to both extensions.

Coming, now, to the merits of the motion, it is the general rule that a new trial will be granted on the ground of surprise only when it is clearly shown that the movant was actually surprised, that the facts from which the surprise resulted had a material bearing on the case, that the verdict or decision resulted mainly from these facts, that the alleged condition is not the result of movant's own inattention or negligence, that he has acted promptly and claimed relief at the earliest opportunity, that he has used every means reasonably available at the time of the surprise to remedy the disaster, and that the result of a new trial will probably be different.   (*O'Donnell* v. *Bennett,* 12 Mont. 242, 29 Pac. 1044; *Schellhous* v. *Ball,* 29 Cal. 605; *Doyle* v. *Sturla,* 38 Cal. 456; *Chicago & Great Eastern Ry. Co:* v. *Vosburgh,* 45 Ill. 311; *Hull* v. *Minneapolis St. Ry. Co.,* 64 Minn. 402, 67 N. W. 218; 1 Spelling on New Trial and Appellate Practice, sec. 201; 14 Encyclopedia of Pleading and Practice, 723.)   If, at the time the condition arises, the party can make use of other evidence at hand, or can avoid the threatened disaster by securing a continuance, or by submitting to a nonsuit, he must do so; and not only so, but, after these means have failed, he must by his showing make it clear that his allegation is not a mere pretense to cover his own lack of diligence.   As was said in *Schellhous* v. *Ball, supra:* "It is the duty of the courts to look upon applications for new trials upon the ground of surprise with suspicion, for the reason that from the nature of the case surprise may be often feigned and pretended, and the opposite party may be unable to show that such is the case.   Hence, the party alleging surprise should be required to show it conclusively, and by the most satisfactory evidence within his reach."   In *Chicago & Great Eastern Ry. Co.* v. *Vosburgh, supra,* the court said: "In applications for new trials on such ground it is not only necessary that the party should have been surprised, but that it was in a matter material to

the issue, and that it produced injury to the party; that it was not the consequence of neglect or inattention on the part of the party surprised; also, that he used all reasonable efforts to overcome the evidence which worked the surprise, or that it was not within his power to have done so by the employment of reasonable diligence.''

Applying this rule to the appellant's affidavit, we find that it is insufficient in several particulars. It does not appear therefrom, except by way of conclusion of the affiant, what inquiry appellant made of the witnesses whose conduct is complained of; nor does it appear, except in the same way, what they told him they would testify to. Except the statement of Hatfield that Hall said he ''went and took it,'' referring to the water, we have but the conclusion of the appellant as to what the purport of the statements to him by the witnesses were. They may have had the purport and evidentiary value assigned to them by the appellant, but that this is true we cannot say, because the details of them are not before us. The evidence heard by the trial court is not before us. Therefore, we cannot say, except from the statements in the affidavit, that the court based its findings as to the mill ditch mainly upon their testimony. So far as we know, there may have been other evidence in the case, and sufficient to justify the finding, even if the witnesses had testified as appellant supposed they would. For, while we may infer from the affidavit that they were the only witnesses called by appellant, there is no positive statement that such was the case, or that they were the only witnesses who testified as to the mill ditch. From the affidavit, as a whole, coupled with the fact that many other witnesses were found after the trial was over who could furnish the desired evidence, we think the inference permissible that the appellant was negligent in the search for evidence to sustain his contention prior to the trial, and that the judge who decided the motion thought so.

There is a total want of any showing of prompt action and diligence on the part of the appellant in his effort to avoid the result of his alleged surprise at the testimony, when it came

out.  He made no application for a continuance.  He did not call the attention of counsel to the matter; nor was it called to the attention of the court.  It does not appear that he did not have other evidence at hand or within reach which would have been available.  In fact, so far as we can judge, he sat silent during the trial, and, though the cause was tried by the court sitting without a jury, and it was held under advisement from June 4th, the date of the trial, until August 30th, the appellant made no application to have the cause reopened, but still remained silent, thinking, no doubt, that the result would be satisfactory.  Evidently the surprise upon which he relies is the surprise at the result, rather than at anything that occurred during the trial.

A consideration, which is conclusive, however, is that it is not at all apparent that there is any probability that the result reached by the trial judge would be different if a new trial were granted.  As stated above, the evidence is not before us, and though it may be·conceded that the new witnesses whose affidavits are embodied in the record would testify as they allege, in the absence of the evidence, we cannot say that a different result would probably be reached.

We are of the opinion that no abuse of discretion is shown, and that the order denying a new trial should be affirmed.  It is so ordered.

*Affirmed.*

MR. JUSTICE HOLLOWAY and MR. JUSTICE SMITH concur.