LENAHAN, RESPONDENT, *v.* CASEY, APPELLANT.

(No. 3,181.)

(Submitted October 31, 1912.   Decided November 20, 1912.)

[128 Pac. 601.]

*Partnership—Dissolution—Equity—Jury Trial—Issues—Error in Submitting—Presumptions—Theory of Case—Change of—Harmless Error—Attorneys—Privileged Communications—Evidence—Declarations—Admissibility—Admissions—Offer of Compromise.*

Equity—Jury Trial—Issues—Error in Submitting—Presumptions.
  1.  An action looking to the dissolution of a partnership, upon the abandonment of a counterclaim for damages, was one of equitable cognizance, exclusively for the determination of the trial judge, using the jury in attendance in an advisory capacity; hence any error committed in submitting issues to them will be deemed to have been corrected when the judge came to consider the case for final decision.

Same—Theory of Case—Change of—Harmless Error.
  2.  Where it is apparent from the record that the parties to an equitable action introduced all the evidence they could, and appellant did not, when the findings were filed, ask for permission to submit additional evidence, nor move for a new trial on the ground of surprise, having been led to omit the introduction of available evidence by the court's action in limiting the evidence to one issue indicated at the opening of the trial, an alleged erroneous change of the theory of the case, by submitting to the jury an additional issue, was nonprejudicial and insufficient to warrant the granting of a new trial.

Partnership—Dissolution—Method Other Than One Provided in Agreement.
  3.  The decree of the district court ordering an adjustment of the affairs of a partnership through an accounting, without regard to a provision in the partnership agreement designating the course to be

pursued in order to effect a dissolution, *held,* proper where such agreement provided two methods which were fundamentally inconsistent with each other.

Same—Attorneys—Privileged Communications—Evidence.

4. Under the rule that communications made to an attorney while acting for both parties do not fall within the prohibition of section 7892, Revised Codes, relative to privileged communications, when a controversy arises as to the matter about which he has thus been the common adviser, a statement by an attorney as to what transpired between plaintiff and defendant touching a settlement of their partnership affairs while he was acting as attorney for the firm was properly admitted.

Same—Attorneys—Privileged Communications—Inapplicability of Rule.

5. The purpose of the rule making communications by a client to his attorney privileged being to enable the former to make confidential disclosures to the latter, without fear of publication, it has no application where no such disclosures have been made; therefore testimony of an attorney that though he had consulted with defendant relative to a receivership proceeding arising out of the affairs of a partnership, a suit for the dissolution of which was then on trial, his client had never informed him that he had purchased plaintiff's interest in the firm as he then claimed, was properly admitted.

Same—Declarations—Admissibility in Evidence.

6. Where defendant in a suit to dissolve a partnership had testified that certain notes given by him to plaintiff were in payment of the latter's interest in the concern, a stipulation, made subsequent to their execution and after the controversy between the parties had arisen, which specifically recognized the existence of the partnership, was properly admitted as showing a declaration on defendant's part directly contrary to his testimony.

Same—Admissions—Offer of Compromise—Evidence.

7. The statement of a fact, the existence of which was not essential to an alleged compromise was not a concession made in order to effect it, and does not fall within the rule of section 8040, Revised Codes, that "an offer of a compromise is not an admission that anything is due."

*Appeal from District Court, Cascade County; J. B. Leslie, Judge.*

Action by James Lenahan against M. B. Casey to obtain a decree dissolving a partnership existing between them and an adjustment of the partnership affairs. Plaintiff appeals from a judgment in favor of defendant and an order denying his motion for a new trial. Affirmed.

*Mr. James E. Murray,* and *Mr. Victor R. Griggs,* submitted a brief in behalf of Appellant; *Mr. Murray* argued the cause orally.

*Messrs. Stranahan & Stranahan,* for Respondent, submitted a brief; *Mr. F. E. Stranahan* argued the cause orally.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action by plaintiff to obtain a decree dissolving a partnership existing between himself and defendant, under the firm name of N. D. Cattle Company, and an adjustment of the partnership affairs. The partnership was first established between the parties by oral agreement on April 27, 1901, for the purpose of conducting a cattle business in Chouteau county. It seems that the agreement at that time was that the plaintiff was to furnish such cash capital as was necessary to start the business, and that defendant was to give his personal time and attention to its management. They were to share equally in the profits. On July 30, 1902, they entered into a written agreement in which the assets then belonging to the firm were estimated to be $15,000. It was stipulated that each partner contributed one-half of this sum and that the partnership should continue for the term of ten years. The defendant was designated as the manager. He was to give his whole time and attention to the business, consulting the plaintiff, however, at all times as to its financial affairs and recognizing him as its financial head. Each was to use his utmost skill and endeavor for the joint profit and advantage. They were to discharge equally all rents and other expenses, to divide all gains share and share alike, to bear equally all losses, to keep books of account in which should be recorded faithfully all transactions conducted by either partner. These were to be accessible to both at all times. On December 31 of each year, and oftener if necessary, each was to render to the other a full account of property in his hands, of profits and increase theretofore made, as well as losses, if any, and of all receipts and disbursements, and "clear and adjust, each to the other at the time, their just share of the profits so made as aforesaid." It was further stipulated: "That at the end, or other sooner determination, of the copartnership, which shall be discretionary with either party, that is, at any time said partners become dissatisfied and disagree, a true inventory of the stock shall be taken and the price affixed, and it shall be compulsory

for one or the other to buy or sell, and at said time the copartners, each to the other, shall and will make a true, just and final statement, of all things relating to their said business, and in all things truly adjust the same; and that all and every stock and stocks, as well as the increase thereof which shall appear to be remaining either in money, goods, wares, fixtures, debts or otherwise, shall be divided between them, share and share alike."

The complaint alleges the formation and existence of the partnership and the possession by defendant of all the property belonging to it. It charges the defendant with negligent and extravagant management of its business and property, with disposition of property for which he had failed to account, with use of some of the property for his personal profit, and with failure to account in accordance with the terms of the agreement. It charges, further, that he has been withholding from the plaintiff information concerning the condition of the business, with the result that there has arisen disagreement and dissatisfaction between plaintiff and defendant as to its management; that defendant has refused to sell his interest or to buy that of plaintiff at any reasonable or fair price, and that plaintiff and defendant have been unable to agree upon any amount for which either may buy or sell. It charges, further, that the partnership has fallen greatly into debt; that the plaintiff claims an interest therein superior to that of plaintiff, and that for these reasons and the other matters alleged, it has become imperative that the partnership be dissolved and its affairs adjusted. Soon after the filing of the complaint the court, upon the application of plaintiff, appointed a receiver to take charge of the assets of the partnership pending final hearing. The answer admits the formation of the partnership and possession of all its property by defendant as alleged, but denies all the allegations of misconduct on the part of the defendant. By way of counterclaim, after stating somewhat in detail the history of the partnership from its first inception in 1901 to the time this action was brought, it alleges that on or about July 30, 1907, the plaintiff and the defendant came to a mutual accounting of their affairs; that plaintiff, being desirous of withdrawing from the partnership, re-

quested the defendant to execute to him a promissory note for the sum of $3,250, which sum represented the total amount contributed by the plaintiff to the partnership at the time of its inception on April 27, 1901, together with compound interest to the date of its execution; that this was done; that at the same time defendant executed another promissory note to plaintiff for the sum of $1,884.68, to cover all other sums contributed by the plaintiff up to the date of accounting; that these notes were executed and delivered upon the express agreement that they were to be accepted by the plaintiff, and were accepted by him, as payment in full for his interest in the partnership, and that the defendant was to assume charge and control of all of its assets as his own and out of them to pay all debts outstanding; that from that time the plaintiff ceased to have any interest in the business, the defendant being the sole owner; that during each year since that date the defendant has paid the interest accruing on the notes, plaintiff having no other claim against the defendant; that this action was instituted maliciously and oppressively on the part of plaintiff, for the purpose of compelling the defendant to enter into some compromise of plaintiff's unlawful demands and claims; and that by procuring the appointment of a receiver the plaintiff has prevented the defendant from carrying on his business, thereby damaging him to the amount of $5,000. It concludes with a prayer that the complaint be dismissed, that defendant have judgment for actual damages in the sum of $5,000, for punitive damages in the sum of $10,000 and for his costs. The reply joins issue upon the counterclaim. It then alleges that prior to the date of the agreement of July 30, 1902, the plaintiff had advanced to the partnership the sum of $3,000, and that prior to the accounting had on July 30, 1907, he had advanced the further sum of $1,884.68; that the defendant had represented to plaintiff that he was an experienced stockgrower and had made representations, upon which plaintiff relied, that all moneys so advanced by him would make a return to him of from twenty-five to thirty-five per cent profit; that the defendant promised plaintiff that he would return out of the profits of the business all moneys so advanced within five years after the date

of the inception of the partnership; that in the event he failed to make payment before the expiration of five years he would, at the expiration of that time, or on·July 30, 1907, make such payment of the whole amount advanced or so much thereof as had not already been paid; that the note for $3,250 was given to cover the amount first advanced together, with interest accrued prior to July 30, 1902, which plaintiff had paid to obtain this sum, and the one for $1,884.68 to cover all sums advanced thereafter and prior to July 30, 1907, and that the sums named therein were intended to reimburse plaintiff for these advances and for no other purpose, and were understood to be and did represent an indebtedness to the plaintiff to be paid out of the assets of the copartnership. It is further alleged that the plaintiff is now the owner and holder of said notes and that a portion of the interest only has been paid, such payments having been made out of the assets of the partnership.

At the trial the defendant seems to have abandoned entirely his claim for damages. After a jury had been called there was some discussion between the court and counsel as to how the hearing should proceed. Counsel for plaintiff suggested that there should first be determined the question whether the partnership had been dissolved by the settlement made in 1907, their theory being that if this issue were determined in favor of defendant, he would be entitled to judgment; otherwise the plaintiff would be entitled to the relief demanded in the complaint. The court adopted this suggestion and ruled that the jury should be required to find on this question only. To this ruling counsel for defendant excepted. It was also ruled that the burden was upon the defendant and that the hearing should proceed accordingly. At the close of the hearing the court instructed the jury to find on the question indicated by counsel, and also upon the further question whether before commencing the action the plaintiff had offered to buy the defendant's interest upon reasonable terms and had offered to sell his interest to defendant on like reasonable terms. The jury answered the first question in the negative and the second in the affirmative. Subsequently the court adopted these findings. It found further that

the defendant had been guilty of misconduct in claiming that he had bought the interest of plaintiff and that the partnership no longer existed; that the partnership was heavily indebted, and that the adjustment of its affairs would require the examination of a long account in order to carry the judgment of dissolution into effect. It rendered and ordered entered a decree dissolving the partnership and directing that further proceedings be had and taken according to law to settle its affairs. The defendant has appealed from the judgment and an order denying his motion for a new trial.

The first assignment counsel make in their brief is that the court erred "in limiting the trial to the single issue whether or not the defendant had purchased the plaintiff's interest in the copartnership." Instead of noticing the question presented by the assignment, counsel devote almost the whole of their argument to the question whether the evidence is sufficient to sustain the first finding. They insist that the finding is not supported by any evidence other than the statements of plaintiff, which, when viewed in the light of all the facts and circumstances appearing in the case, is wholly unworthy of credit. In this counsel are in error. It appears without question that at the inception of the partnership in 1901, the plaintiff advanced for the purchase of stock, *etc.*, the sum of $3,000. Part of this ($1,000) was paid in cash; the rest ($2,000) was represented by a promissory note executed by plaintiff to pay the balance of the purchase price, which he thereafter paid with interest to the amount of $250. It appears also without question that when the formal agreement was made in 1902 the plaintiff demanded and received from the defendant a note for $3,250, with the understanding and agreement that at the end of five years he was to receive payment of this sum out of the assets of the firm, but without interest. This is established not only by the testimony of plaintiff, but by that of Kendig, the firm bookkeeper, and by Carnal, the firm attorney. The settlement referred to in the pleadings as having taken place on July 30, 1907, actually took place in December of that year. It occurred at a room in a hotel at Havre. There were present the plaintiff, the defendant, Kendig and Carnal. Up to

that time the business had not been profitable; in fact, it had been conducted at a loss. The firm had incurred indebtedness for land and stock. A large sum was due to a bank at Fort Benton. Owing to the stringency in the money market it was impossible for the firm to borrow, and creditors were pressing for payment of their demands. The plaintiff proposed to the defendant that they form a corporation and discharge or secure some of their indebtedness by payment or assignment of stock. To this defendant demurred, because, as he said, plaintiff wrongly insisted that he should have 10,000 out of a total of 15,000 shares of the corporate stock, thus claiming a greater interest than he was entitled to. Being unable to agree upon anything definite, they finally went over the books and had a settlement. Plaintiff insisted that inasmuch as five years had elapsed since the formal agreement had been made, he was entitled to have repaid to him all moneys advanced to the firm up to the date of settlement. Defendant assented to this, and thereupon executed a note for $3,250, in lieu of the old note held by plaintiff for the same sum, as of date of July 30, 1907, and due one year later with interest at eight per cent per annum. The old note was thereupon canceled. It was ascertained from the books that other money had been advanced by plaintiff to meet debts due from the firm, to an amount considerably more than $2,000. From this was deducted $600, which plaintiff stated was to balance a charge of ten dollars per month which defendant had drawn for pocket money during the five years. For the balance, $1,884.64, the defendant executed a second note bearing date October 30 and due one year later, with eight per cent interest per annum. The first of these notes bears the signature of the defendant alone; the second bears the firm name, by "M. B. Casey, Mgr." The evidence furnishes no explanation of this difference in the signatures and dates of the notes; but there is no dispute that both were to be paid out of the firm assets. As before stated, the plaintiff, Kendig and Carnal all agree that the notes were the result of the understanding had between the parties when the written agreement was made as claimed by plaintiff and assented to by the defendant. All agree that they

had never heard any claim made by defendant that the result of the settlement was a purchase by him of plaintiff's interest until the filing of his answer in this case. Besides, it appears that subsequent to the date of settlement the plaintiff signed notes with the defendant to cover firm indebtedness due to different creditors, and thereupon paid interest on them out of the funds of the firm, for which he continued to act as the financial head just as he had acted theretofore. In addition to this evidence, it appears that at the time application was made to the district court for the appointment of a receiver, an effort was made by the parties through their counsel to effect a settlement of all of their differences. It was then agreed by stipulation filed in the district court that the appointment of the receiver should be deferred for a period of ten days, and that if in the meantime the defendant would pay to the plaintiff the sum of $6,000, the plaintiff would surrender to him the notes and convey to him his interest in the partnership. In this stipulation the existence of the partnership was specifically recognized. To rebut this evidence there was the statement of the defendant, standing alone, to the effect that the notes represented the purchase price which he agreed to pay to plaintiff for his interest, under a secret arrangement made with plaintiff which had not been divulged to Kendig and Carnal at the time of the settlement, and which was not thereafter to be divulged to anyone until the notes had been paid. From this brief *résumé* of the evidence, it becomes apparent that there is no substantial foundation for the claim by defendant that the result of the settlement was a purchase by him of plaintiff's interest. There is therefore no merit in the contention of counsel; and since the existence of the partnership at the time the action was commenced is clearly established, it is wholly aside from the merits of the controversy to inquire whether the court erred in submitting the case to the jury as it did. The abandonment of the damage feature of the case eliminated the law issues. It then became the exclusive province of the judge to ascertain the facts and to declare the rights of the parties, using the jury, however, in an advisory capacity, if he found it desirable to do so,

and submitting to it for determination such issues as he chose. He could adopt their findings or reject them and make others if in his judgment the facts in the case justified the one course or the other. Therefore, any error committed in submitting issues was subject to correction when the judge came to consider the case for final decision. (*Ferris* v. *McNally,* 45 Mont. 20, 121 Pac. 889, and cases cited.)

It is argued that while the defendant was required to [2] submit his evidence upon the single issue indicated by the court at the opening of the trial, the court had the jury to find upon the additional question whether the plaintiff had endeavored to effect a settlement with the defendant before bringing the action, and thus changed the theory of the case entirely. In a sense this is true, but it. does not follow that a new trial should be ordered for this reason. It is apparent from the record that the evidence introduced was all that either of the parties had in his power to introduce. At least no suggestion was made to the trial court, when the findings were filed, by way of application to submit additional evidence, that such was not the case, nor on the motion for new trial, that the defendant had been led to omit the introduction of any available evidence by the course pursued by the court, and had therefore been taken by surprise. If such was the fact, he should have acted promptly by then informing the court that there was such evidence and that he had omitted to introduce it because he thought there would later be a further hearing. (*Hill* v. *McKay,* 36 Mont. 440, 93 Pac. 345.) In any event, the way was open to him to move for a new trial on the ground of surprise. (Rev. Codes, sec. 6794.) He did not do this, and now insists that he should be awarded a new trial upon the purely technical ground that the court did not pursue exactly the course indicated at the opening of the trial. We cannot ascertain from the record that defendant has suffered any wrong in this behalf.

It is argued under this assignment, also, that since the partnership agreement designates the course to be pursued in order [3] to effect a dissolution, the plaintiff was bound to pursue this course, and that the office of the court was confined exclu-

sively to the enforcement of this part of the agreement. Let it be conceded that this is the general rule. (Lindley on Partnership, sec. 432.) When we come to examine the agreement, however, to ascertain the plan provided therein, we find not one but two provisions which are fundamentally inconsistent with each other. Under the first an inventory of the stock must be taken and the price fixed, whereupon it shall be compulsory for one or the other partner to buy or sell. Under the other, the stock and the increase, *etc.*, are to be divided between the partners share and share alike. Which of the partners has the first option to buy or sell? Who has the right to say whether the first or the second provision shall be pursued? It appears, also, from the evidence that during the course of the business the firm has purchased land, an investment which it seems was not contemplated by the partners at the time of the inception of the partnership. Under which of the two provisions in the agreement is this to be disposed of? How, under these circumstances, could the court enforce specific performance of either provision? Under the reservation in the agreement the plaintiff had the right to demand a dissolution at any time he became dissatisfied with the conduct of the business. (Rev. Codes, sec. 5494; Parsons on Partnership, sec. 359.) The evidence makes it entirely clear that he was dissatisfied and that he and the defendant could not agree. We think the court properly concluded that neither mode of dissolution provided in the agreement could be enforced, and that adjustment between the partners should be reached through an accounting in the ordinary way without regard to the agreement. And let it be conceded that the assertion in defendant's answer of exclusive ownership by him is not in itself sufficient to justify the decree of dissolution, the evidence fully justifies the conclusion that the business had not been profitable and that the partners could not agree as to how it ought to be conducted. This is amply sufficient to support the decree.

The witness Carnal had acted as the attorney of the firm from the date of its inception. He was called by plaintiff to testify [4] touching the settlement at Havre, in December, 1907.

Objection was made that, since he had been the attorney for the defendant, he was not a competent witness as to any communication made to him by the defendant. The evidence was properly admitted. The witness was asked to relate only what took place at that time between the plaintiff and the defendant while he was acting as attorney for both. Communications made to an attorney while acting for both parties do not come within the prohibition of the statute (Rev. Codes, sec. 7892), when a controversy arises as to the matter about which he has thus been the common adviser. (40 Cyc. 2368; 23 Am. & Eng. Ency. of Law, 2d ed., 65.)

The witness McDonough had been counsel for defendant upon the application for the appointment of the receiver, and had joined in the conference with counsel for the plaintiff which resulted in the stipulation referred to above. He was permitted [5] to testify over objection—the ground thereof being the same as that made the basis of the objection to the testimony of Carnal—that though he had consulted with the defendant with reference to the case, the defendant had not at any time informed him or claimed that he, defendant, had purchased plaintiff's interest. The purpose of the rule declared by the statute is to enable the client to disclose fully the facts upon which his rights are to be determined or upon which he seeks advice, without fear of publication, so that counsel may be put in a position successfully to perform the duties arising out of his employment (23 Am. & Eng. Ency. of Law, 2d ed., 56) ; but where no confidence has been reposed, there is nothing to disclose, and the rule does not apply. (*Matthews* v. *Hoagland,* 48 N. J. Eq. 455, 21 Atl. 1054.) For this reason we are inclined to the opinion that the evidence was competent; but even though it be conceded that it comes within the principle of the prohibition and that the ruling was for this reason erroneous, the court could not have found otherwise than it did upon the other evidence introduced. Therefore no prejudice was wrought by it.

The stipulation was properly admitted. It contained a specific recognition of the existence of the partnership at the [6] time it was signed. It was introduced to show this fact

only, and for this purpose it was proper as showing a declaration of defendant directly contrary to his statement when he testified on the stand as to his previous purchase of plaintiff's interest. Even if it be conceded that the stipulation was an offer of [7] compromise and was conditionally accepted as such, the declaration to the effect that the partnership was still in existence was not essential for the purpose of the compromise, and is not to be regarded as a concession made in order to effect it. This feature of it is the recital of an independent fact and is not within the rule of the statute (Rev. Codes, sec. 8040), that "an offer of a compromise is not an admission that anything is due." (*Rose* v. *Rose,* 112 Cal. 341, 44 Pac. 658; *Kutcher* v. *Love,* 19 Colo. 542, 36 Pac. 152; 16 Cyc. 915; 1 Rice on Evidence, 435; 1 Greenleaf on Evidence, sec. 192.)

Error is assigned upon other rulings upon questions of evidence, but they are not of sufficient merit to demand special notice.

Finally, it is said that the decree does not specifically determine all the rights of the parties. We understand that by this statement counsel mean that it was incumbent upon the court to determine in the decree whether, upon an adjustment of the account between the parties, the notes held by plaintiff should be a charge in his favor against the partnership assets. In this counsel are again in error. All questions touching the items of charge and credit as between the partners, including the disposition which should be made of these notes, are to be determined upon the taking of the account, subject to correction by the court when the final result is submitted to it for approval.

The decree and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.