VESEL, Appellant, *v.* POLICH TRADING CO. et al., Respondents.

(No. 7,172.)

(Submitted January 4, 1934.  Decided January 18, 1934.)

[28 Pac. (2d) 858.]

Mr. *George W. Farr,* Mr. *G. J. Jeffries* and Mr. *A. G. McNaught,* for Appellant, submitted a brief; Mr. *Farr* argued the cause orally.

120

*Mr. M. J. Lamb,* for Respondents, submitted a brief and argued the cause orally.

122

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

This is an appeal by the plaintiff from a judgment in favor of defendants. The essential facts are that on March 1, 1926, the plaintiff purchased from the defendant Polich Trading Company the Elk and the Oakland Hotels in Roundup, Montana, including the furniture and equipment therein, for $12,500, for which sum she executed to the Polich Trading Company on that day a promissory note, payable in monthly installments of $150, with interest at the rate of six per cent.

per annum from date, the first installment being payable on or before April 1, 1926, and the last on or before March 1, 1933. Plaintiff retained a copy of the note. To secure the payment of the same, plaintiff executed and delivered to the Polich Trading Company a chattel mortgage covering the furniture and equipment of the hotels, and also a real estate mortgage embracing the hotels. The plaintiff did not make any down payment on the purchase price; her first payment being for the installment due April 1, which she made April 16, 1926. The payment of May 1 was not made until May 20, that of June 1 on July 28, and the payments for July and August on September 20. These refer to the year 1926. The payments for the year 1927, and for the months of January and February, 1928, were made promptly, it would appear from the receipts introduced in evidence. Thereafter the plaintiff was in arrears. The payment due March 1, 1928, was not made until November 19, 1928; the payments due April 1 and May 1, 1928, were made January 17, 1929. Plaintiff made other payments in 1929 on account of installments due in 1928. Significant payments are those made August 12, September 18, October 24 and November 24, in 1929, to pay installments due, respectively, on November 1 and December 1, 1928, and January 1 and February 1, 1929. No payments were made by plaintiff after November 24, 1929.

Every time plaintiff made a monthly payment on the note, she obtained from the Polich Trading Company a receipt therefor, and during the period commencing August 2, 1928 (on which date the November 1, 1927, installment was paid), to and including November 24, 1929, she had M. T. Polich, managing agent of the Polich Trading Company, write the word "Paid" opposite the monthly installment to which the payment applied on her copy of the note.

On the eighteenth day of August, 1930, the Polich Trading Company placed a certified copy of the chattel mortgage in the hands of the sheriff with instructions to foreclose the same under the power of sale contained therein. On August 21 the sheriff levied on the personal property located in the two

hotels, and gave notice that he would sell the furniture, fixtures and personal property of every kind and character belonging to the plaintiff located in the hotels, on the twenty-eighth day of August, 1930, at 2 o'clock P. M. Thereupon plaintiff commenced this action in the district court of Musselshell county against the Polich Trading Company and the sheriff, praying for the issuance of an injunction restraining them from selling the mortgaged property or otherwise interfering with her possession thereof. She alleged ownership of the property advertised to be sold by the sheriff, and that she had paid the mortgage indebtedness in full. Pursuant to a hearing, a temporary injunction was issued enjoining the foreclosure pending the final determination of the case, or until further order of the court.

After a demurrer to the complaint had been overruled, the defendants filed an answer denying the allegations of the complaint and counterclaims asking for judgment against the plaintiff and foreclosures of the mortgages. Issue was joined by reply.

The case was heard before Honorable Stanley E. Felt, sitting in place of Honorable G. J. Jeffries, disqualified, and a jury. At the conclusion of the evidence, the court did not instruct the jury, but submitted to it two interrogatories, reading as follows:

(1) "Did the plaintiff pay the defendant Polich Trading Company the sum of $3,000 in the month of July, 1929?"

(2) "Was there an agreement made between the plaintiff and the defendant that the defendant would accept the sum of $3,000 in settlement of the amount remaining unpaid upon its promissory note and mortgages?"

The jury answered both interrogatories in the affirmative. Thereupon the defendants requested the court in writing to set aside the jury's findings and to make findings of fact and enter judgment in their favor, and the plaintiff in turn moved the court in writing to adopt the findings of fact and to render judgment in her favor. After having the matter under advisement for about three months, the court filed its findings of

fact and conclusions of law, wherein it rejected the findings of the jury and made findings in favor of the defendants, concluding as a matter of law that the defendant Polich Trading Company was entitled to judgment against the plaintiff for the sum of $10,295, an attorney's fee, and costs of suit, and to a foreclosure of its mortgages, and rendered judgment and decree accordingly.

The principal specifications of error are: That the court erred in not adopting the findings of the jury; in finding that the plaintiff did not pay to the Polich Trading Company in the month of July, 1929, the sum of $3,000; in finding that there was not any agreement that the Polich Trading Company would accept from plaintiff the sum of $3,000 in settlement of the amount remaining unpaid upon the promissory note.

The plaintiff testified that for some time she had been negotiating with Polich, managing agent of the Polich Trading Company, leading to a settlement of the entire indebtedness, and that on or about July 17, 1929, she paid to him $3,000 in full settlement of a balance of approximately $9,000 then remaining unpaid on the promissory note. She said she had this $3,000 in currency at the time she purchased the property on March 1, 1926, and had kept it in a safe in the office of the Elk Hotel at all times from the time she took possession of that hotel until she paid it to Polich. She kept her duplicate copy of the note for $12,500 and all the receipts for the installment payments in the safe where she kept the currency. But there was not any indorsement of the $3,000 on her duplicate of the promissory note, nor did she obtain any receipt for it. She explained that she asked Mr. Polich for a receipt, but he said he had no paper upon which to write it but would send it to her; that he did not send her a receipt for the same, although she demanded it frequently. She had made all the monthly payments to Polich in the dining room of the Elk Hotel, but the $3,000 was paid in the kitchen. She testified that she sent her daughter Annie for the receipt, but without avail. She herself repeatedly demanded the receipt from Polich, but he did not give it to her; a month or two afterward

he came to her place and demanded more money, and, when she demanded a reason for his failing to give her a receipt, he said she would have to pay him back interest. After he commenced the foreclosure, she said, he came to the restaurant with a gun and told her to settle up or he would kill her right there. After July 17, 1929, the date when she says the $3,000 was paid, it will be recalled she made four monthly payments with interest. In explanation of this she said she feared if she did not make the payments Polich would foreclose and she would lose her restaurant business. She said that after November 24, 1929, up to the 25th of August, 1930, Polich came nearly every day and demanded money from her.

Hugh Price, testifying for plaintiff, said that between 1 and 2 o'clock in the afternoon of July 17 he saw plaintiff pay Polich $3,000 in currency. The witness at that time was conducting a store and butcher-shop, and had gone to the Elk Cafe to solicit an order from the plaintiff. Just as he arrived, he said, plaintiff came into the kitchen with a roll of bills which she gave to Polich; she counted them out and said, "There's $3,000 here, you count them," and Mr. Polich counted them and said $3,000 was right. This occurred "in the kitchen right by the little kitchen table, there in front of the stove." Mr. Polich put the money in his pocket. The plaintiff asked for a receipt, whereupon Polich said he would go to the store and send down a receipt; Polich started to write a receipt there, but did not finish it. Plaintiff told Polich she wanted him to cancel the mortgage, and he said he would attend to that. Price was subjected to a rather extensive cross-examination, which may have altogether shaken the court's faith in his testimony.

Annie Vesel, daughter of the plaintiff, testified that at the request of her mother she demanded a receipt from Polich a day or two after July 17, 1929, and he said he would bring it down himself. She did not hear any conversation between her mother and Polich respecting the payment of the $3,000. After that date and until January, 1930, Polich came down

frequently for money, but her mother told him she did not owe him anything.

A witness for plaintiff, Mary Ott, testified that "for a couple of months right after Christmas of 1929" Polich came down to the hotel nearly every day, sometimes two or three times a day, asking for money.

Polich denied that plaintiff paid him $3,000 or any other sum or sums of money, except those indorsed on the copy of the promissory note which plaintiff retained, and as shown by the receipts which were introduced in evidence.

The county treasurer of Musselshell county testified that plaintiff paid the first installment of the 1928 taxes on the Elk Hotel property, and all other taxes on the hotel property subsequent to the year 1926 were paid by Polich. Other witnesses than those referred to testified for plaintiff and for defendants, but a further review of the testimony will not be enlightening.

Counsel for plaintiff say that the court in the trial of an equity case may not entirely disregard uncontradicted credible testimony, citing *Piersky* v. *Hocking*, 88 Mont. 358, 292 Pac. 725, *Laundreville* v. *Mero*, 86 Mont. 43, 281 Pac. 749, 69 A. L. R. 416, and *Sylvain* v. *Page*, 84 Mont. 424, 276 Pac. 16, 20, 63 A. L. R. 528. "That the trial court may not disregard uncontroverted credible evidence is fundamental." (*Sylvain* v. *Page*, supra.) But that refers to evidence bearing upon a material issue in the case. After a careful analysis, we do not find that the court erred in this respect.

Counsel for plaintiff admit that while the rule is universal that in an equity case the findings of the jury are advisory only and not conclusive, the court was not justified in wholly disregarding them; they say this court has not so held. Counsel are in error. In *Gallagher* v. *Basey*, 1 Mont. 457, the court said: "The suit under consideration was a bill in chancery, wherein the equitable jurisdiction of the court was properly invoked, and the record herein clearly shows that it was tried to the court sitting as a chancellor, and that the decree emanates from the chancellor, and that the questions submitted to the jury were to aid the conscience of the court, but not to

control it, as fully appears from the fact that while the jury answered that as against the plaintiffs, the defendants had not diverted or appropriated the waters of the stream to the injury or damage of the plaintiffs, the court found precisely to the contrary; that the defendants had diverted and appropriated said waters, to the damage and injury of the plaintiffs, and base a decree for a perpetual injunction upon this fact.'' The case went to the Supreme Court of the United States, where, in a decision by Mr. Justice Field, the decree was affirmed. In the course of the opinion, the learned Justice said: ''If the remedy sought be a legal one, a jury is essential unless waived by the stipulation of the parties; but if the remedy sought be equitable, the court is not bound to call a jury, and if it does call one, it is only for the purpose of enlightening its conscience, and not to control its judgment. The decree which it must render upon the law and the facts must proceed from its own judgment respecting them, and not from the judgment of others.'' (*Basey* v. *Gallagher*, 20 Wall. 670, 680, 22 L. Ed. 452.)

In *Lenahan* v. *Casey*, 46 Mont. 367, 128 Pac. 601, 604, the court said: ''It then became the exclusive province of the judge to ascertain the facts, and to declare the rights of the parties, using the jury, however, in an advisory capacity, if he found it desirable to do so, and submitting to it for determination such issues as he chose. He could adopt their findings, or reject them and make others, if, in his judgment, the facts in the case justified the one course or the other.'' And in *Ayers* v. *Buswell*, 73 Mont. 518, 238 Pac. 591, 593, we said: ''The function of the jury was to enlighten the chancellor, and in the performance of that duty, to pass upon the credibility of the witnesses in the first instance. The court was not bound by the jury's findings, but was free to disregard them for any reason or without reason. * * * ''

The court might have been satisfied that the jury, although entirely honest in its views, arrived at the wrong conclusion. The court took into consideration features of the case which impressed it, but which may not have made any impression on

the jury whatever. We are told by counsel for the plaintiff that the court in reviewing the evidence said: "There are many particulars in which the plaintiff's testimony impressed the court as being improbable. It is improbable that plaintiff would pay $3,000, the amount she claimed was paid in full settlement of the indebtedness, and obtain no receipt for the payment. She was very particular to receive a receipt for every monthly installment in addition to endorsing the payment on the original and copy of the note. To pay out money on that sort of an obligation without a receipt was not her way of doing business. * * * It would have been so easy 'for M. T. Polich to go and get a receipt, or to have endorsed the payment on the note if the plaintiff would not have paid it to him until she obtained some written notice of its receipt."

The court may have thought it improbable that plaintiff had $3,000 in her possession when she bought the property, upon which she did not make any down payment, afterwards permitting herself to fall into serious arrears in making monthly payments and failing to pay the taxes. The court thought it strange that she paid four monthly installments after making a payment of $3,000 in settlement of the entire indebtedness. The court doubtless had in mind that a bill or note is presumed to be still unpaid while it is in the possession of the payee, in the absence of marks or indorsement showing payment. (8 C. J. 1014; *Thorpe* v. *Hovick*, 134 Wash. 249, 235 Pac. 14; *L. Grauman Soda Fountain Co.* v. *Etter*, (Ariz.) 16 Pac. (2d) 417.)

In *Light* v. *Stevens*, 159 Cal. 288, 113 Pac. 659, 660, Mr. Justice Angellotti, speaking for the court, said: "It is elementary that the possession of the note by the payee, bearing no indorsement of payment, raises a presumption of nonpayment of any portion of the amount thereof. It is provided by our Code that an obligation delivered up to the debtor is presumed to have been paid (Code Civ. Proc., sec. 1963, subd. 9 [our section 10606, subd. 9, Rev. Codes 1921, is the same]), and the converse of this, viz., that possession by the payee is prima facie evidence of nonpayment, is universally held (see

*Turner* v. *Turner,* 79 Cal. 565, 21 Pac. 959; *Griffith* v. *Lewin,* 125 Cal. 618, 58 Pac. 205). This presumption is well supported by reason, and, in the absence of proof of other facts reasonably warranting an inference of payment, must prevail.''

The plea of payment tenders an affirmative issue, and the burden is upon him who asserts it. ''In an action on a promissory note the plaintiff establishes a prima facie case by proving the note, and it is necessary, therefore, to justify a verdict in favor of the defendant upon the plea of payment, that he produce evidence sufficient to overcome the prima facie evidence in favor of the plaintiff arising from the note's being in his possession, and also to outweigh any other evidence in the case tending to show that the note was unpaid.'' (21 R. C. L. 119; *Perot* v. *Cooper,* 17 Colo. 80, 28 Pac. 391, 31 Am. St. Rep. 258.)

Even if we were to assume that the trial court might have reached a different conclusion upon the evidence, it cannot be said that it shows a decided preponderance against the court's ▮ finding. In addition to the presumption adverted to, we are obliged to bear in mind that a preponderance of the evidence may be established by the testimony of a single witness against a greater number of witnesses who testify to the contrary. (*McQuay* v. *McQuay,* 81 Mont. 311, 263 Pac. 683, and cases cited.) In this case the court acted within its province when it refused to believe the testimony of the plaintiff and her witnesses upon the decisive point, to-wit, whether the $3,000 was paid by plaintiff as she alleges, or whether any agreement to that effect was made. The court heard what the witnesses said, ''and saw how or the manner in which they said it.'' (*Sanger* v. *Huguenel,* 65 Mont. 236, 211 Pac. 349.)

We have frequently called attention to the advantageous ▮ position of the trial judge as compared to that of the one who reviews the case upon the cold record. Words merely appearing upon the printed page are far less communicable than when they are expressed by the tongue. ''The speaker can put into his words something which the writer cannot put there. He may convey by the tone of his voice, by a look or a ges-

ture, suggestions too subtle for expression on the written page.'' (Professor Austin W. Scott, quoted in *Labbitt* v. *Bunston,* 84 Mont. 597, 277 Pac. 620, 622.) This is the main basis for the rule that the appellate court will not disturb the decision of the trial court upon conflicting testimony.

We cannot say upon the dead record that the trial court ▮▮ was wrong in its conclusions. We must follow the oft-repeated rule that this court ''will not overturn the findings of the trial court unless there is a decided preponderance of the evidence against them (*Copper Mountain M. & S. Co.* v. *Butte & Corbin Con. C. & S. M. Co.,* 39 Mont. 487, 104 Pac. 540, 133 Am. St. Rep. 595), and, when the evidence, fully considered, furnishes reasonable grounds for different conclusions, the findings will not be disturbed. (*Nolan* v. *Benninghoff,* 64 Mont. 68, 208 Pac. 905.)'' (*Allen* v. *Petrick,* 69 Mont. 373, 222 Pac. 451, 452; *Shepherd & Pierson Co.* v. *Baker,* 81 Mont. 185, 262 Pac. 887; *Dahlberg* v. *Lannen,* 84 Mont. 68, 274 Pac. 151; *Poague* v. *Poague,* 87 Mont. 433, 288 Pac. 454.)

After a careful examination of the evidence, we find there is substantial support for the findings, and, as there is not a decided preponderance against the findings, we must decline to disturb them. (*Watkins* v. *Watkins,* 39 Mont. 367, 102 Pac. 860; *Reid* v. *Hennessy Merc. Co.,* 45 Mont. 383, 123 Pac. 397; *Bickford* v. *Bickford,* 94 Mont. 314, 22 Pac. (2d) 306.)

We do not find anything in the testimony indicating that the court committed prejudicial error in the terms of the decree upon which specification of error No. 7 is based.

The judgment is affirmed.

ASSOCIATE JUSTICES ANGSTMAN, MATTHEWS, STEWART and ANDERSON concur.